[L. A. No. 26068.   In Bank.   Nov. 16, 1961.]

HERBERT W. HARRIMAN, Plaintiff and Appellant, v.
JACK TETIK et al., Defendants and Respondents.

Crooks and Gunter and John E. Crooks for Plaintiff and Appellant.

Karl K. Ransom and Toshiro Hiraide for Defendant and Respondent Tetik.

Irving D. Friedman for Defendant and Respondent Calstate Escrow Service, Inc.

TRAYNOR, J.—On October 19, 1958 plaintiff agreed to buy a half interest in defendant Tetik's cocktail lounge, the "Fancy Free." Tetik had listed the entire business for sale, and the parties contemplated sale of the remaining half when plaintiff had learned the business and raised the capital. They agreed to operate the business as a partnership in the meantime. The contract, drawn as an escrow agreement on a form provided by defendant Calstate Escrow Service, stated that Harriman would pay into escrow the full price of $9,500. He also promised to pay directly to Tetik half the value of the

liquor on hand as well as half the amount Tetik had previously paid for a deposit on the lease. The $9,500 was allocated by the parties: $3,000 for fixtures and equipment, $3,500 for the leasehold interest, and $3,000 for the liquor license. Tetik promised to place in escrow a bill of sale to the property along with notices of intended transfer of the license and of sale of stock in bulk. He promised also to apply for transfer of the license, to assign the lease, and to deliver the bill of sale. Transfer of the license by the Department of Alcoholic Beverage Control was made a condition of the sale. A general clause provided that if the seller should ''for any reason whatsoever . . . fail, refuse, or be unable to deliver subject business as per these instructions . . .'' all payments received by the seller would be returned.

Pursuant to the agreement, plaintiff paid the entire purchase price into escrow and paid an additional $3,459 directly to Tetik. On the following November 4th, apparently understood as the date of sale, the parties began joint operation of the business. Thereafter, the escrow agent, following the instructions, paid to Tetik or to his creditors, $6,740.09, retained certain fees for itself, and left $2,322.91 in the escrow account.

Although the business was operated as a partnership for approximately three months, with each party assuming managerial functions and handling the finances, no formal transfer was ever made of the lease, the license, or of the fixtures and equipment. Formal transfer was postponed until plaintiff decided whether to purchase the remainder of the business.

On February 9, 1959, plaintiff served Tetik with a ''Notice of Rescission'' of the contract for alleged ''fraud'' and ''failure of consideration.'' Immediately thereafter, he filed an action against Tetik for rescission and for restitution of the consideration paid. Plaintiff joined Calstate Escrow Service as a defendant seeking return of the money remaining in escrow and to hold Calstate liable for the money it had paid to Tetik and his creditors. Plaintiff then attached the tavern fixtures. A considerable amount of the liquor was removed from the premises before the sheriff could attach it. Tetik attempted to carry on the business with his own funds, but was able to do so for only two weeks, since the sheriff removed the fixtures. The lease was allowed to lapse, and the business came to an end. Tetik then conveyed the liquor license to his attorney, keeping the entire proceeds from the sale.

The court, sitting without a jury, found no fraud by Tetik

and entered judgment in his favor.[1] Plaintiff, however, was allowed recovery from Calstate of the amount still in escrow less $325 for attorney fees and costs, but was denied recovery of the money Calstate had paid out. The court did not award plaintiff any of the business' assets, and the judgment left him with only $1,977.91 of the $12,959 he had paid. Tetik had received from plaintiff $10,199.09, almost the full price of one-half of the business, and retained the fixtures, the accumulated earnings, and the entire proceeds from the sale of the license.

Plaintiff appeals. ▉▉▉ He contends that Calstate is liable to him for $6,740.09 paid out of escrow before the sale date allegedly in "breach of statutory duty" imposed by Business and Professions Code section 24074 and in violation of the escrow agreement. Section 24074, however, imposes no obligation on the escrow agent, and the trial court correctly construed the agreement in holding that Calstate's payments to Tetik and to his creditors were not in breach of the escrow agreement. In addition to the usual printed exculpatory clauses purporting to relieve the escrow agent of liability, the agreement included a typed paragraph stating that Calstate "shall not be held liable or responsible for said distribution prior to the close of escrow." The record supports the trial court's conclusion that the quoted words embodied the intention of the parties and that both of them understood that the money was to be paid out of escrow at the time it was in fact paid.[2] Tetik testified that Harriman accompanied him on the two occasions he received the disbursements from Calstate.

---

[1] The court, accepting Tetik's suggested findings of fact *in toto*, found that the allegations of his cross-complaint against Harriman for damages were false.

[2] On cross-examination Tetik testified:

"Q. Who dictated the instructions that you were to be paid $6,000 from the escrow fund? A. I had that understanding with Mr. Harriman and Creveling [a broker] and Mr. Creveling dictated it.

". . . . . . . . .

"Q. And when you told Mr. Harriman this did you tell him when you would want that money? A. Yes.

"Q. How did you say it? A. I said I wanted it as soon as I could get it.

"Q. Did you tell him whether you would have to have it before the close of escrow? A. Well, there was not even any mention of 'close of escrow' in it. It was stated by Mr. Creveling that I could take the money out and agreed to by Mr. Harriman that I could take the money five days after a notice of intention to sell was passed and recorded."

Harriman stated on cross-examination:

"Q. All right, I mean specifically as to this $6,000, tell the Court what you remember today of what was said on that day. A. I do not

Apparently Harriman made no objection either time. The trial court was therefore justified in concluding that "As to the Escrow Company, plaintiff agreed to all steps of the escrow and cannot hold Escrow Company liable."

Plaintiff contends that the trial court erred in failing to find a mutual rescission of the contract on the ground that Tetik ratified the attempted rescission by selling the license. Although he did not raise this issue in the trial court, plaintiff urges that under *Ward* v. *Taggart,* 51 Cal.2d 736 [336 P.2d 534], he may raise it on appeal. In the Ward case, however, the new theory involved solely a question of law. (*Ward* v. *Taggart, supra,* at p. 742; see *Panopulos* v. *Maderis,* 47 Cal. 2d 337, 341 [303 P.2d 738].) ▮ To allow mixed questions of law and fact to be raised on appeal for the first time would disrupt the orderly administration of justice. (See *Caplan* v. *Schroeder, ante,* pp. 515, 521 [15 Cal.Rptr. 145, 364 P.2d 321]; *Panopulos* v. *Maderis, supra,* at pp. 340-341; 64 Harv.L.Rev. 652.) ▮ "The question of whether a contract has been cancelled, rescinded or abandoned is a mixed question of law and fact . . . which is addressed to the trial court. . . ." (*Ross* v. *Frank W. Dunne Co.,* 119 Cal.App.2d 690, 698 [260 P.2d 104]; see *Hagen* v. *Sherman,* 147 Cal.App. 2d 28, 30-31 [304 P.2d 767].) ▮ Mutual rescission involves the formation of a new contract, and the issues include the same questions of law and fact regarding offer and acceptance that occur in any other problem of contract formation. (See 5 Corbin on Contracts, § 1236, pp. 956-957.) ▮ Whether in the instant case Tetik's sale of the license constituted an acceptance of an offer to rescind was a mixed question of law and fact that should have been presented to the trial court.

▮ Plaintiff also contends that the judgment cannot be sustained, on the ground that in violation of section 634 of the Code of Civil Procedure the trial court signed Tetik's suggested findings of fact within two days after they were submitted, thereafter refusing to consider plaintiff's suggested findings. Section 634, however, "has on numerous occasions been held to be merely directory and not mandatory." (*Treat* v. *Superior Court,* 7 Cal.2d 636, 639 [62 P.2d 147]; *Noland* v. *Noland,* 44 Cal.App.2d 780, 784 [113 P.2d 11]; see *Pruyn*

remember who made the original request that $6,000 be released for Mr. Tetik, whether it was Mr. Tetik or Mr. Creveling.

"Q. Can you remember agreeing that that should be a provision in the escrow agreement? A. I can remember that prior to signing any papers."

v. *Waterman,* 172 Cal.App.2d 133, 141 [342 P.2d 87].) The trial court's action did not constitute reversible error.

Plaintiff next contends that the judgment worked a forfeiture contrary to the rule of *Freedman* v. *Rector, Wardens & V. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1]. We there held that even a willfully defaulting purchaser of real property could recover consideration paid to the extent he could show that it exceeded the seller's damages. That principle extends beyond real estate transactions and applies in a variety of situations to avoid unjust enrichment. (See e.g., *Bird* v. *Kenworthy,* 43 Cal.2d 656 [277 P.2d 1]; *Begovich* v. *Murphy,* 359 Mich. 156 [101 N.W.2d 278].) Although plaintiff grounded his claim for restitution on fraud, the facts pleaded and proved, his demand for relief, and the issues stated in the pretrial order entitled him to restitution. So far as the record indicates, Tetik's only loss was of the leasehold interest.

It is contended, however, that plaintiff is not entitled to restitution on the ground that the contract was illegal. Section 24073 of the Business and Professions Code provides:

"No retail license limited in numbers shall be transferred unless before the filing of the transfer application with the department the licensee or the intended transferee records in the office of the county recorder of the county or counties in which the premises to which the license has been issued are situated a notice of the intended transfer, stating all of the following:

". . . . . . . . . . .

"(e) An agreement between the parties to the transfer that the consideration for the transfer of the business and license or licenses, if any there be, is to be paid only after the transfer is approved by the department [of Alcoholic Beverage Control]." The contract did not provide for payment only after the state had granted the application for transfer of the license, and the consideration was paid out of escrow immediately.

The general rule, subject to a wide range of exceptions, is that parties to an illegal agreement cannot seek the aid of the courts upon a breach of contract. (See *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 150 [308 P.2d 713]; *Miller* v. *California Roofing Co.,* 55 Cal.App.2d 136, 141 [130 P.2d 740]; Restatement of Contracts, § 598.) The contract herein, however, was not illegal, and no considerations of public policy require treating it as such. Business and

Professions Code section 24073 neither declares transfers of licenses to be against public policy nor expressly voids contracts specifying payments of consideration before application for a license transfer is made. The injunction "No . . . license . . . shall be transferred . . ." is not directed at the buyer and the seller. The Department of Alcoholic Beverage Control, not the parties, transfers licenses. The parties, denominated the "licensee" and the "intended transferee" merely apply to the department for a transfer. (Bus. & Prof. Code, §§ 24070-24074; see *Martin* v. *Alcoholic Beverage Control Appeals Board,* 52 Cal.2d 259, 261-262, 264 [341 P.2d 291]; *Rishwain* v. *Department of Alcoholic Beverage Control,* 162 Cal.App.2d 207 [328 P.2d 473].) Realizing this, the parties did not purport to transfer the license themselves.

Tetik discussed the delay in applying for a transfer with a representative of the department who, in Tetik's words, stated that "there is nothing in particular about it, no big rush." Tetik promised only to take the necessary steps to have the department transfer the license, and the entire sale was made conditional on the department's willingness to do so. By failing in good faith to provide for the prescribed time for payment in their contract, the parties merely failed to comply with a condition that had to be satisfied before the department could make the transfer. Under these circumstances, there is no reason to deny restitution. (See generally, Grodecki, *In Pari Delicto Potior Est Conditio Defendentis,* 71 L.Q.Rev. 254; Wade, *Restitution of Benefits Acquired Through Illegal Transactions,* 95 U.Pa.L.Rev. 261.)

Sections 24073 and 24074 of the Business and Professions Code protect the interests of creditors of the seller by allowing them to satisfy their claims out of the purchase price. They also protect the buyer from loss of his consideration if the department does not transfer the license to him. In this case, the creditors of Tetik were fully protected by a provision in the agreement that the creditors could be paid from funds in escrow. Thus the statutory purpose to protect creditors was accomplished, and its purpose to protect the buyer would be defeated if he could not recover the seller's unjust enrichment.

The judgment as to defendant Calstate is affirmed. The judgment is reversed insofar as it denies plaintiff restitution of any part of the consideration paid, and the trial court is directed to retry the issue of the amount thereof to which he is entitled. In all other respects the judgment is affirmed.

Defendant Calstate is awarded its costs on this appeal. Plaintiff and defendant Tetik are to bear their own costs on this appeal.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.