[Civ. No. 27880.   Second Dist., Div. One.   Dec. 31, 1964.]

ALEXANDER T. CHOHON, Plaintiff and Appellant, v. FARMERS & MERCHANTS BANK OF LONG BEACH et al., Defendants and Appellants.

Arthur J. Crowley and Ben Levin for Plaintiff and Appellant.

Charles Z. Walker, Jr., Joseph E. Madden, Riedman & Dalessi and William T. Dalessi for Defendants and Appellants.

LILLIE, J.—Cross-appeals are here presented, the controversy involving seven asserted causes of action against defendants in which damages are asked "for conspiracy to commit fraud and deceit and malicious interference with business relations of bank customer." Demurrers to the third, fourth and seventh counts of the first amended complaint having been sustained without leave to amend, the action was dismissed as to said counts; as to the first and fifth counts, defendants' motion for summary judgment was granted and the action likewise dismissed as to these counts. Plaintiff's appeal is from the adverse portions of the above judgment. A motion by defendants for summary judgment as to the second and sixth counts, however, was denied; the cross-appeal is from such portions of the same judgment.

The litigation centers around three business transactions between plaintiff and defendant Farmers & Merchants Bank (referred to hereinafter as "Farmers") during the course of 1958 while plaintiff was a customer of Farmers. In April of that year, according to count one, plaintiff was indebted to Farmers in the sum of $214,500 evidenced by unsecured notes; he was also indebted in other amounts to other creditors. On or about that date Farmers made arrangements with Republic National Bank of Dallas (referred to hereinafter as "Republic") for an additional line of credit. The credit later extended by Republic was in the sum of $350,000 conditioned upon his use of such funds for the purchase of first trust deed notes on California property and their subsequent sale to investors. A further condition imposed was that plaintiff have such notes on deposit with Farmers, as agent for Republic,

or cash on deposit with Farmers or Republic in an amount equal to the difference between the total amount of the notes and the amount borrowed by plaintiff from Republic. Plaintiff never used the money for the purposes it was loaned because, as count one alleges, it was orally (and fraudulently) represented to him by an officer of Farmers that if he prepaid Farmers and certain other creditors the amounts not then due, which he subsequently did with Republic's money, Farmers within 30 days would loan plaintiff $340,000 to purchase trust deed notes in compliance with his agreement with Republic. The above promise to plaintiff, it is alleged, was made without any intention to perform—and was not performed. Thereafter plaintiff was obliged to pledge certain assets to meet his commitment to Republic. Defendants, (save Linda Vista Development Co.) upon learning of this, declared such pledging to be an act of bankruptcy and filed a petition to have plaintiff so adjudicated. An adjudication to that effect was later made. The complaint alleges that plaintiff's net worth at the time of the filing of the petition was in excess of $3,725,000. Damages were sought for the destruction of this net worth as well as loss of anticipated profits in the sale of trust deed notes; punitive damages were also demanded.

The next business transaction, covered by count two of the complaint, involved a $125,000 unsecured loan at 5 per cent interest obtained by plaintiff from Farmers in May of 1958. The loan was assertedly made upon the fraudulent representation of one of Farmers' officers that if plaintiff would use this money to purchase all of the stock of California Pacific Mortgage Company and if plaintiff would then cause California Pacific to purchase a certificate of deposit, bearing 3 per cent interest, and would endorse such certificate to Farmers and allow the latter to hold the same in trust for California Pacific, Farmers would not redeem or negotiate the certificate within one year or in any manner employ it as security for plaintiff's loan. Upon borrowing the above sum and using it to purchase the stock (as promised), plaintiff thereafter purchased the certificate of deposit and delivered it to Farmers with the endorsement requested. Less than one year later, Farmers redeemed the certificate and used the money for repayment of plaintiff's personal loan. As a result, California Pacific was deprived of its reserve assets and was forced to and did cease doing business; as a further result, plaintiff's stock in the company became worthless. Damages, both compensatory and punitive, were sought.

The next transaction between the parties also oc-

curred in May of 1958 and is the subject of count three. Therein it is alleged that plaintiff was the owner of all of the stock of Continental Escrow Company. It maintained, as required by law, two types of bank accounts: a general account for its own funds, and a trust account in which clients' funds were deposited. On May 15, an officer of Farmers fraudulently represented to plaintiff that it would make him a personal loan of $125,000 at 5 per cent without security if he would cause Continental to draw a check for $125,000 on its trust account payable to its general account and thereafter cause Continental to draw a check in the same amount on its general account payable to Farmers; upon delivery, they were to be held in trust for Continental. Under no circumstances, it was further (and fraudulently) represented, would Farmers cash either of said checks or employ either as security for plaintiff's loan. Plaintiff borrowed the money and caused the two checks to be drawn and delivered as requested. On December 10, 1958, defendants cashed both checks, thereby unlawfully withdrawing $125,000 from the company's trust account which was used to pay plaintiff's personal loan. As a consequence, the California Corporation Commissioner issued an order terminating Continental's right to do business. The value of plaintiff's stock was thereby reduced from $2,421,000 to $600,000. Compensatory damages for the above loss, as well as punitive damages, were asked.

The above three counts were against all the defendants save Linda Vista Development Company and were predicated upon defendants' fraud and deceit and a conspiracy to that end. Count four is against all the defendants (including Linda Vista); it incorporates the allegations of count three and also alleges that defendants fraudulently caused plaintiff to become bankrupt. Linda Vista, it is stated, had purchased the notes given Republic by plaintiff and was plaintiff's largest creditor.

The remaining counts were predicated upon an asserted interference with plaintiff's business relationship with Republic (count five), California Pacific (count six) and Continental Escrow (count seven). As to these counts, however, Linda Vista was not joined as a defendant. Damages, both compensatory and punitive, were demanded.

We first examine the merits of the appeal as it relates to counts three, four and seven, all of which concern the Continental Escrow transaction. It appears that plaintiff requested permission to file a proposed second amended complaint in which the infirmities appearing in its predecessors

were assertedly corrected; permission to file was denied, and error is assigned to this ruling. The trial court filed an opinion, part of the record before us, which serves to explain its action in sustaining the demurrers to the counts in question, namely, that the complaint as amended (and as proposed to be amended) shows on its face that plaintiff had violated the law, specifically sections 17414, subd. (a), 17409 and 17411 of the Financial Code, as well as certain sections of the Penal Code.[1] We are of the opinion that such determination was correct. For example, section 17409 provides (as indicated below) that "[a]ll money deposited in escrow to be delivered upon the close of the escrow . . . shall be deposited in a bank and *kept separate, distinct* and *apart from funds belonging to the escrow agent* . . . ." (Italics added.) Plaintiff's pleading alleges that he "did cause CONTINENTAL to draw a check in the amount of $125,000 on its said trust account at FARMERS and made payable to said general account at FARMERS. . . ." Such transaction in itself constituted a violation of the provisions above emphasized; too, section 17011 of the same code declares that "The violation of any provision of this division [including the Escrow Law] is a misdemeanor unless a different punishment is prescribed." Wholly irrelevant to the problem, therefore, is plaintiff's argument that there was no delivery or, at most, only a conditional delivery ("in trust") of the instrument, quoting section 3097 of the Civil Code providing that "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto . . ." Delivered "in trust" or otherwise, the trust account was that much poorer upon execution of the check in question. Likewise irrelevant is defendants' argument, on the other hand, that plaintiff and Continental were insolvent on December 4, 1958 (approximately one week before the checks were cashed) and thus sustained no damage, and that he was convicted of violating section 17414, subd. (a), Financial Code, and is therefore collaterally estopped to assert the present claims; neither of the above matters is mentioned in plaintiff's pleading, and the trial court properly limited its ruling to the allegation appearing in the complaint and the proposed amendment thereto.

---

[1]Financial Code, section 17414, subd. (a): "Any person subject to this division or any director, officer, agent, or employee of any such person who does any of the following is guilty of a felony:

"(a) Knowingly receives or possesses himself of any property of the escrow otherwise than in payment for a just demand, and with intent to defraud omits to make or to cause or direct to be made a full and

■ It follows that "If the plaintiff cannot open his case without showing that he has broken the law, the court will not assist him, whatever his claim of justice may be upon the defendant." (*Asher* v. *Johnson*, 26 Cal.App.2d 403, 416 [79 P.2d 457].) Indeed, it is not necessary that the governing statute declares the transaction to be illegal per se (as here); considerations of public policy may require a court to treat it as such. (*Harriman* v. *Tetik*, 56 Cal.2d 805, 811 [17 Cal.Rptr. 134, 366 P.2d 486].) Certainly a sound public policy does not permit the diversion of trust funds in the manner revealed by plaintiff's pleading.

■ We next examine the merits of the appeal relating to counts one and five (the Republic transaction) as to which summary judgment in defendants' favor was granted. The trial court stated in its opinion that the $350,000 borrowed by plaintiff from Republic constituted funds held in trust by plaintiff under the trust receipt deposited with Republic;[2] accordingly, plaintiff's use of said funds to repay Farmers constituted a breach of said trust by both plaintiff and defendant bank. The following statement of the law was applied by the trial court to the facts thus presented: "The rule is well settled that the party claiming protection against the fraudulent conduct of another must himself be free from the imputation of fraud." (*Castroville Co-op. Creamery Co.* v. *Col*, 6 Cal.App. 533, 536 [92 P. 648].) In his declaration opposing the motion for summary judgment, plaintiff states

---

true entry thereof in the escrow books and accounts, or knowingly concurs in omitting to make any material entry.''

Financial Code, section 17409: ''All money deposited in escrow to be delivered upon the close of the escrow or upon any other contingency, shall be deposited in a bank and kept separate, distinct and apart from funds belonging to the escrow agent. Such funds, when deposited, are to be designated as 'trust funds,' 'escrow accounts,' or under some other appropriate name indicating that the funds are not the funds of the escrow agent.''

Financial Code, section 17411: ''No person shall knowingly keep or cause to be kept any funds or money in any bank under the heading of 'trust funds' or 'escrow accounts' or any other name designating such funds or money as belonging to the clients of any escrow agency, except actual escrow or trust funds deposited with such agency.''

[2]Said instrument reads in pertinent part: ''Received from Republic National Bank of Dallas, Dallas, Texas, the items or documents enumerated in the following schedule, which items or documents are the property of said Bank and shall be kept separate and apart from all other items or documents, and are received and held in Trust, subject always to the order of said Bank . . .

''The following is the schedule of the items or documents as received and held in Trust by us:

''Various First Trust Deeds aggregating $350,000 covering property located in Los Angeles County, California, or in lieu thereof cash on deposit with Republic National Bank of Dallas.''

that at the time the loan was made Republic knew that plaintiff did not possess the trust deeds referred to in the subject instrument and that the $350,000 was being loaned for their *subsequent* purchase;[3] it is argued that since the trust receipt made no reference to funds withdrawn by plaintiff from Republic for the purchase of trust deeds, funds later withdrawn and deposited with Farmers to meet his obligation with the latter bank were no longer held in trust for Republic. The answer to this contention is found in the affidavit of defendant Charles Z. Walker supporting the motion and wherein is contained the testimony of plaintiff at the criminal trial. Asked about the meeting with an officer of Farmers concerning one of his transactions with that bank, the record discloses the following: ''Q. And did you have a conversation with him at that time. A. Yes. I told him that I was concerned about *the money* that had been used *that belonged to the Dallas bank,* and that I was supposed to purchase trust deeds with, and I wanted him to lend it back to me.'' (Italics added.) Even though the affidavit of the moving party (for summary judgment) must be strictly construed, no triable issue appears in light of the above admissions.[4] There is also a discussion in the briefs of certain legal formalisms, pro and con, which are said to control, or not to control (as the case may be), this phase of the appeal. We are persuaded, however, that the principles of law applied in *Castroville,* as well as in *Asher* v. *Johnson, supra,* 26 Cal.App.2d 403, and *Harriman* v. *Tetik, supra,* 56 Cal.2d 805, were here properly applied by the trial court; since they are dispositive of the present point, we pass to the matters raised by defendants' cross-appeal.

Preliminarily, no appeal lies from an *order* denying a motion for summary judgment. (*Stanton* v. *Andrews,* 170 Cal. App.2d 269 [338 P.2d 529].) But in the present case, it appears, the two steps contemplated by the statute (Code Civ. Proc., § 437c) were properly taken, namely, an *order* followed by a *judgment* thereafter duly entered in the judgment book.

---

[3]It appears that plaintiff, apparently without funds to make such purchase, thereafter deposited several forged or fictitious notes with Farmers for the account of Republic.

[4]Such admissions are admissible not necessarily on the defendants' theory of res judicata, the right to assert which defense is challenged by plaintiff, ''but as the deliberate declaration or admission against interest that the fact is so . . . and under pain of penalty, when his every interest lay in stating to the contrary, were it not for the pains of perjury.'' (*Langensand* v. *Obert,* 129 Cal.App. 214, 218 [18 P.2d 725].) In accord: *Vaughn* v. *Jonas,* 31 Cal.2d 586 [191 P.2d 432].

(*Integral Land Corp.* v. *Anderson,* 62 Cal.App.2d 770, 771 [145 P.2d 364].)  ▮▮▮  As noted earlier, the cross-appeal concerns counts two and six (the California Pacific transaction). In addition to the details of this transaction previously set forth, there was this further detail. California signed the continuing guaranty of the personal loan made to plaintiff; immediately upon doing so, however, defendants assertedly agreed that such guaranty would disqualify California Pacific from F. H. A. approval and defendants assertedly agreed to destroy it. When the certificate of deposit was cashed, defendants took the position that California Pacific had guaranteed plaintiff's loan; unable to meet that guarantee, the company lost F.H.A. approval and was forced out of business. One of the rules and regulations promulgated by the Commissioner of Federal Housing, and applicable to California Pacific, required that that company have sound capital funds of not less than $100,000; compliance with such rule and regulation turned on the truth or falsity of conflicting claims contained in defendants' declarations in support of the motion and plaintiff's declaration in opposition thereto. Since it is the rule that a strict construction must be given the moving papers and a liberal interpretation accorded those opposing the motion, we make mention of the statement of Farmers on June 27, 1958, being an exhibit (Ex. "K") attached to plaintiff's declaration, that California Pacific had a time certificate on deposit and had no liabilities to the bank, contingent or otherwise. Certainly an issue of fact was thus presented.  ▮▮▮  A motion for summary judgment is not a trial upon the merits; it is merely to determine whether there is an issue to be tried (*Walsh* v. *Walsh,* 18 Cal.2d 439, 442 [116 P.2d 62]), and any doubt as to its granting must be resolved against the movant. (*Albermont Petroleum, Ltd.* v. *Cunningham,* 186 Cal.App.2d 84 [9 Cal.Rptr. 405].)

▮▮  As done in the instance of their companion motion (counts one and five), defendants invoke the doctrines of res judicata and collateral estoppel (citing *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439]) as a further defense to the recovery sought by plaintiff in counts two and six. Reference is made to the bankruptcy proceeding where the special master found that the stock of California Pacific was valueless on December 4, 1958—hence plaintiff suffered no damage as a result of defendants' acts; other adverse findings of the special master are also pointed out. The *Teitelbaum* case involved a *criminal* proceeding, which the bankruptcy proceeding was not; while

defendants also rely on plaintiff's conviction of several felonies, the judgment of which has long since become final, it appears that defendants undertook to waive their right to assert the above defenses by filing a cross-complaint for declaratory relief as to these counts. That such waiver may be effectively accomplished is well settled. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 219 [209 P.2d 387, 11 A.L.R.2d 835].) ▮ We hold that a summary judgment as to counts two and six was properly denied.

The effect of the above determination is that with the affirmance of the judgment of dismissal (counts three, four and seven) and the affirmance of the denial of the summary judgment (counts two and six), there is an affirmance of a partial summary judgment in defendants' favor (counts one and five). ▮ While the summary judgment procedure, a creature of statute, makes provision for a partial judgment in plaintiff's favor, it does not authorize a partial judgment for the defendant. (Code Civ. Proc., § 437c; 2 Witkin, Cal. Procedure 1717 (1954) § 80.) As was done in *de Echeguren* v. *de Echeguren*, 210 Cal.App.2d 141 [26 Cal.Rptr. 562], the matter as it pertains to counts one, two, five and six must be reversed for further proceedings not inconsistent with the views herein expressed. ▮ In this connection, it should be noted that the federal courts have held that rule 56, after which the California statute is patterned (at least in part), does not authorize ''a partial summary judgment'' (40 Cal. L.Rev. 204, 222). Continuing: ''The Advisory Committee has stated that the partial adjudication is 'merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.' *The facts so found are binding upon the parties in all subsequent proceedings*,'' citing cases. (Italics added.) The trial court should be governed by the above observations, with which we are in agreement.

The judgment as to counts three, four and seven is affirmed; as to all remaining counts it is reversed. Respondent Linda Vista Development Company will recover its costs; the remaining parties will bear their own costs.

Wood, P. J., concurred.

FOURT, J.—I dissent as to that part of the judgment which affirms the trial court in dismissing the third, fourth and seventh causes of action.

I concur in the judgment insofar as it reverses the trial court in granting a summary judgment in the first and fifth causes of action.

I would affirm the judgment of the trial court in denying summary judgment as to the second and sixth causes of action.

A reading of the record in this case (which includes many of the bank's own documents) indicates without any question that the bank was engaged in chicanery and deceit in many of the transactions in question. Further, it is indicated that some perjured testimony was given by the bank's representative at the criminal trial of plaintiff (and even that the prosecutor at that trial knew or had good reason to believe that some of the oral testimony of the bank's officer witness was in direct contradiction to the official records of the bank then in the possession of the prosecutor) and, consequently, the rule in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*, 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439] should not apply. I am convinced that under the particular and peculiar circumstances of this case, the plaintiff should have been permitted to amend his complaint as requested, and the demurrer thereto should not have been sustained without leave to amend, and judgment entered accordingly in the third, fourth and seventh causes of action. In the first and fifth causes of action, the motion for summary judgments should not have been granted.

In the interests of sound administration of justice and particularly so where semi-public businesses such as banks and other financial institutions (which ought to have the confidence of the public) have been formally charged with illegal, false and dishonest practices, every reasonable opportunity should be afforded to the litigants to establish their pleadings in proper form to the end that the disputes and charges in such cases will be settled and disposed of in accordance with the merits and the facts of the cases and not on hypertechnical rules of pleading.

The petitions of all parties for a hearing by the Supreme Court were denied February 24, 1965. Peters, J., was of the opinion that the petitions should be granted.