## In the Matter of WARRACK MEDICAL CENTER HOSPITAL, Debtor.

### No. 31615.

United States District Court
N. D. California.
March 28, 1968.

John R. Jenkins, M. D., petitioner in review, Orlando J. Bowman, of Bowman, Trant & Colthurst, Oakland, Cal.

Lawrence Goldberg, of Glicksberg, Kushner & Goldberg, San Francisco, Cal., for debtor Warrack Medical Center Hospital.

John H. Moskowitz, of Spridgen, Moskowitz, Barrett and Achor, Santa Rosa, Cal., for Mrs. Helen W. McAboy.

Cecil F. Poole, U. S. Atty., Northern District of California, San Francisco, Cal., Peter V. Shackter, Asst. U. S. Atty., for respondent.

## ORDER

WOLLENBERG, District Judge.

This is a petition to review an order of the referee in this Chapter XI proceeding which denied petitioner's claim to full ownership of a promissory note in the amount of $72,775.00 and which postponed payment to petitioner of one-half of said claim by reason of a stand-by agreement executed in favor of Small Business Administration. With respect to ownership of the promissory note, the referee found that petitioner and a Mrs. McAboy were each owners of one-half of said note.

 In this proceeding, petitioner contends that the referee failed to make any findings with respect to his claim that a rescission occurred between Mrs. McAboy and himself that had the effect of giving him full ownership of the note in question. He claims that there was an agreement to rescind made at a meeting between him and Mrs. McAboy on December 21, 1960.

The basis of his claim for rescission is his alleged interest in certain real property which he allegedly caused to have conveyed to both him and Mrs. McAboy. This property was later sold to the hospital at a price twice the amount which was paid for it. The promissory note in issue was given to petitioner and Mrs. McAboy for the balance due on the land sold to debtor.

In January, 1960, petitioner entered into a contract with the Matteis to purchase certain land. The land was finally purchased by petitioner and Mrs. McAboy in July, 1960. Petitioner claims that his agreement with Mrs. McAboy was that he would transfer his "interest" in the land if she would lend him sufficient funds for which to purchase stock equal to that purchased by Mrs. McAboy in the newly formed corporation. As further consideration for the transfer of land, Mrs. McAboy promised that petitioner would be administrator of the new hospital, and that no collateral would be needed to secure her loans to petitioner other than promissory notes. The land was transferred by the Matteis to petitioner and Mrs. McAboy. It was then sold to the hospital. The profits made were used to purchase equal amounts of stock in the hospital corporation and to pay back a loan which Mrs. McAboy received from the bank to make a down payment on the property. At later dates, Mrs. McAboy lent petitioner funds to purchase stock in the corporation.

Petitioner was appointed administrator of the hospital in June, 1960. In November, 1960, the board of directors, of which petitioner was a member, voted that no member of the board could be an employee of the hospital. In December, 1960, the Board appointed a new administrator, petitioner's appointment to terminate in February, 1961.

It was immediately following this December board meeting that petitioner and Mrs. McAboy met to discuss their differences. After heated discussion, the parties agreed to dissolve their relationship, with the net effect of having petitioner transfer his stock to Mrs. McAboy in return for the notes she held which were then cancelled. Petitioner left the meeting with the promissory note in issue.

He claims that Mrs. McAboy told him that he could keep the note, that "it was his". From this, he asserts that a rescission by consent was effected. Mrs. McAboy testified that nothing was said about the note in question at this meeting.

Contrary to petitioner's contention, the referee did make findings as to the rescission question. He found:

"There never was any written agreement to transfer Mrs. McAboy's interest in the $72,775.00 note to Dr. Jenkins and it is found that there were no oral or other arrangements made to do so and that both Dr. Jenkins and Mrs. McAboy have an equal interest in the proceeds of the note."

The referee's finding is not "clearly erroneous" in light of the disputed testimony and is supported by legal authority. General Order 47. A rescission can be effected by the mutual consent of the parties, and when this is done, it is treated like any other type of contract and requires a meeting of the minds and consideration. Cal.Civ.Code, § 1689(5); Ross v. Frank W. Dunne Co., 119 Cal. App.2d 690, 260 P.2d 104 (1953); Harriman v. Tetik, 56 Cal.2d 805, 17 Cal.Rptr. 134, 366 P.2d 486 (1962). Here, the referee found in essence that Mrs. McAboy did not agree to a rescission when he found that there were no oral agreements to transfer the interest in the note. Accordingly, the referee's finding on the issue of mutual rescission is sustained.

■ Petitioner next contends that he is entitled to unilaterally rescind the contract for failure of consideration. Cal. Civ.Code, § 1689(2). It is his argument that since Mrs. McAboy breached her promise to retain him as administrator and breached her promise by demanding collateral for the notes, the consideration for his promise to transfer his interest in the Mattei contract failed, and he is entitled to rescind the contract.

The referee did not agree with petitioner's contentions, and essentially made findings contrary thereto. He characterized the dealings between Mrs. McAboy and petitioner as follows:

"It essentially appeared that Dr. Jenkins had long desired to construct a private profit making hospital and finally determined upon a site where debtor hospital is now built. Mrs. McAboy, through one means and another, put up considerable amounts of money in relation to the hospital. The business dealings between Dr. Jenkins and Mrs. McAboy, rather than being completely formalized from the start, rather grew like Topsy. Mrs. McAboy put in monies for the purchase of land which was taken by *both* Dr. Jenkins and Mrs. McAboy and Mrs. McAboy put in monies for the hospital in return for stock for Dr. Jenkins and herself. Dr. Jenkins gave Mrs. McAboy notes to cover his indebtedness to her. Dr. Jenkins and Mrs. McAboy sold real estate to the hospital and received in return the $72,775.00 note * * *" [Emphasis added.]

In finding that the land was taken by *both* petitioner and Mrs. McAboy, the referee essentially destroyed the foundation for petitioner's claim to a unilateral rescission. He contended that he had an interest in the land by reason of the contract with the Matteis, which he *transferred* to Mrs. McAboy. His claim to rescission is based upon the fact that he is trying to get back that which he gave to Mrs. McAboy as represented now by the promissory note in issue. If he in fact did not give Mrs. McAboy the land, then there is nothing for him to give by rescission.

The referee's finding that the Matteis, rather than petitioner, transferred the land to Mrs. McAboy and petitioner is supported by the evidence as well as applicable legal principles. Mrs. McAboy essentially testified that the joint venture contemplated that the land would be purchased jointly with the proceeds of a loan arranged by Mrs. McAboy. Petitioner relies mainly on the contract between himself and the Matteis. That contract by its terms was to expire within ninety-days. The transfer of the land occurred beyond the ninety day limitation. Hence, at the time of transfer, petitioner really had nothing to transfer to Mrs. McAboy.

The evidence is also unclear as to the existence of an agreement by Mrs. McAboy to employ petitioner as administrator of the hospital. While she acknowledged that she told petitioner that he would be administrator, there is nothing in her testimony to indicate that she gave this promise as consideration for an agreement on the part of petitioner to "transfer" the land. From the findings of the referee, which are supported

by the record, it seems that the real agreement of the parties was that Mrs. McAboy would furnish the capital for the joint purchase of land and stock, and in return would get the notes of Dr. Jenkins and a profit on the land.

Accordingly, the referee's findings will be sustained.

In November, 1960, the debtor received additional financing in the amount of $275,000.00 by a loan agreement with Small Business Administration. The debtor's note for the amount of the loan was secured by a deed of trust. In addition, a standby agreement was executed between SBA and the debtor hospital corporation as borrower, and petitioner and Mrs. McAboy as standby creditors. In essence, the debtor or borrower promised that it would not pay any amounts due to standby creditors unless authorized by SBA. The standby creditors also promised to take no action with respect to their claims unless SBA consents thereto. There was also a provision to the effect that in the event of bankruptcy, the standby agreement would constitute an assignment to SBA of all rights of the standby creditors to the claim and distributions with respect to the claim.

On August 1, 1963, the debtor filed its petition for an arrangement under the provisions of Chapter XI of the Bankruptcy Act. On October 12, 1964, a plan of arrangement was filed by the debtor herein. By the terms of said plan, Katella Community Hospital agreed to loan the debtor a large sum of money. Part of this money was to be used to bring current as to principal and interest the debt owned by SBA. Another part of said sum was to be distributed among the unsecured creditors, upon confirmation of the plan, in the amount of forty cents upon each dollar of their allowed claims. Petitioner is a member of that class of unsecured creditors.

The plan was confirmed by the referee on November 5, 1964, after being approved by a majority of the unsecured creditors. On November 19, 1964, the debtor instituted the present proceedings requesting instructions from the referee as to the disposition of the funds with respect to petitioner's claim.

██ It is petitioner's contention that the order confirming the plan of arrangement operates to bar the SBA from now asserting its claim for subordination by the principle of res judicata. In other words, he argues that section 367 (1) of the Bankruptcy Act [11 U.S.C. § 767(1)] makes the plan of arrangement as confirmed by the Court binding upon the SBA.

Section 367(1), supra, provides:

"Upon confirmation of an arrangement —(1) the arrangement and its provisions shall be binding upon the debtor, upon any persons issuing securities or acquiring property under the arrangement and upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable;"

Petitioner relies upon the provisions in the plan with respect to payment to the unsecured creditors upon confirmation, which included petitioner, and argues that the language therein necessarily precludes any claim by SBA to postpone said payment.

The SBA, on the other hand, argues that the standby agreement is in essence an executory contract, and unless it is *expressly* rejected in the plan of arrangement, it remains in full force and effect. It contends further that it was not a creditor within the meaning of the Bankruptcy Act so as to be entitled to object or consent to the plan, and hence could not be bound by the order of confirmation.

The standby agreement clearly is an executory contract. Section 357(2) of the Bankruptcy Act provides that the plan may contain provisions for the re-

jection of any executory contracts. This has been interpreted to mean that unless the plan *expressly* rejects the contract, it remains in full force and effect. In re Greenpoint Metallic Bed, 113 F.2d 881 (2d Cir. 1940). There can be no tacit rejection of an executory contract, as petitioner contends. In re Greenpoint Metallic Bed, supra.

SBA was not entitled to file a claim against the debtor based upon the standby agreement in these proceedings, because there was no breach of the standby agreement by the debtor. Only after the contract is breached or rejected prior to the confirmation of the plan can the creditor then file a claim. In re Burke, 76 F.Supp. 5 (S.D.Cal.1948). Up until that time, he is not a creditor within the meaning of Section 1(28) of the Bankruptcy Act. In re Burke, supra.

While it may be argued, and petitioner has not done so, that by reason of the assignment clause in the standby agreement SBA should have filed claims on behalf of petitioner and Mrs. McAboy, it need not have done so to preserve its rights against the debtor. SBA is not bringing any action against the standby creditors. Rather, it is asking this Court to enforce the promise of the debtor that it will not pay out any monies to the standby creditors unless SBA consents thereto. Courts in bankruptcy have enforced such subordination agreements, and there is no compelling reason why this Court should not do the same. In re Itemlab, Inc., 197 F.Supp. 194 (E.D. N.Y.1961); In re Greenpoint Metallic Bed, supra.

The fact that SBA has not requested that the standby agreement be rejected expressly or assumed so that it might have an allowable claim in case of rejection as was done in the *Greenpoint* case, supra, is immaterial in light of the fact that pursuant to the plan, title to the assets is to revest in the debtor, and hence there are no problems in regard to a new party assuming the contracts of the old debtor. See, 9 Collier on Bankruptcy, § 8.07, at 170 n. 12.

Petitioner's argument that even though the SBA might not be a "creditor", it still "acquired property under the plan", so as to come within the binding provisions of Section 367(1), supra, is unavailing to him since there was no rejection of the contract and hence nothing in the plan to bind SBA in regard to its standby agreement.

Petitioner's last argument that the standby agreement is inapplicable because of the payment of the claims of the unsecured creditors out of money loaned by a secondary obligor is completely without merit in light of the provisions of the standby agreement which require that the secondary obligor be a party to the agreement, which was not the case here.

In light of the above reasons, the order of the referee postponing payment of petitioner's claim is sustained.

Petitioner has recently filed a letter with this Court wherein he submits for the "information" of the Court various "erroneous" ruling of the referee. The untimeliness of such action warrants only a short reply.

In answer to the first objection, it is noted that if petitioner had read further into the record, he would have seen that the referee did not sustain the objections of opposing counsel, but rather allowed the evidence subject to a later ruling which was never made and which was unnecessary to the decision. (RT 44).

With respect to petitioner's second objection, it need only be said that it is entirely irrelevant what Dr. Jenkins did with the money received from the debtor. Petitioner did receive an answer to his question whether SBA objected to payments by the debtor to Dr. Jenkins.

As to point three, and contrary to petitioner's contention, the referee allowed a stipulation to the effect that as

a result of the plan of arrangement, the SBA loan was brought current.

Contrary to petitioner's contention that the referee ruled as irrelevant the fact that the real property had a value in excess of SBA's loan, the record shows that the referee only refused to take a stipulation in this regard *after* counsel for SBA refused to stipulate, pointing out that proof would have to be made on that issue.

Petitioner also asserts that there was error in the referee's sustaining an objection to a question asked in regard to Dr. Jenkins' interpretation of the stand-by agreement. Clearly there was no error, since interpretation of the agreement was a matter of law, and the interpretation thus placed upon it by one party would be irrelevant.

Petitioner also asks that this Court order that Mrs. McAboy pay one-half the costs in the proceeding for review, and also reimburse petitioner for various expenses incurred allegedly as a result of the joint venture agreement. The referee merely stated that the costs of the transcript be paid out of the fund due petitioner and Mrs. McAboy prior to any distribution therefrom. It would seem that this would imply that the costs of the transcript would be paid equally by Mrs. McAboy and petitioner. However, since the matter is to come back to the referee for future action with respect to distribution of the monies, he will have ample time in which to make an order regarding the costs of transcript herein.

Regarding the other claims of petitioner, this Court is completely ignorant as to how it is to order reimbursement without the benefit of any record, certification, or mention of said reimbursement claim in the petition for review. It appears that petitioner is using a "blunderbuss" approach which is totally foreign to these proceedings.

Accordingly, the order of the referee is sustained in its entirety and its findings are hereby adopted by this Court. The petition for review is accordingly denied.