In re **WALCHEF DEVELOPMENT CORPORATION, a .corporation, Debtor.**

No. 11155.

United States District Court, S. D. California.

Feb. 12, 1975.

Robert J. Klitgaard, San Diego, Cal., applicant for fees.

Luce, Forward, Hamilton & Scripps by Theodore W. Graham, San Diego, Cal., for trustee in bankruptcy.

## OPINION AND ORDER

GORDON THOMPSON, Jr., District Judge.

In this proceeding under Chapter X of the Bankruptcy Act, an application for compensation for services rendered as attorney for the debtor has been submitted pursuant to section 249 of the Bankruptcy Act, 11 U.S.C. § 649.

On February 7, 1972, Robert J. Klitgaard, Esq. filed the instant application for an allowance of $5,000.00 as reasonable attorney's fees for beneficial services rendered and $1,954.85 for costs incurred. The application was taken under submission pending the conclusion of the Chapter X proceedings.

On October 7, 1974, the matter came on for hearing in this court, and Mr. Klitgaard's application was approved. Subsequently, Lawrence Holzman, receiver in bankruptcy for the debtor (Walchef Development Corporation), filed a motion urging reconsideration of the application of Klitgaard and further moved the court for an order vacating its prior order.

Briefly, the history of the Walchef Development Corporation is as follows: Luben S. Walchef, M. D., was the owner of a motel located on the southwest corner of the intersection of Wilbur and Cass Streets in San Diego, California. Dr. Walchef conceived of a plan whereby the existing structure would be replaced with a 12 story apartment house containing 118 rental apartment units.

Dr. Walchef had some initial difficulty in arranging for a construction loan to finance the venture. Potential lendors felt that the project was under-capitalized, but a loan was eventually obtained from Continental Mortgage Investors, a Massachusetts business trust, and was recorded in July of 1970. The project commenced and appeared to be on schedule until December of 1970, when some problems began to emerge.

Dr. Walchef then approached U. S. Financial Company to take over the project. It appeared that there would be a closing of the transaction on February 19, 1971, but U. S. Financial withdrew from the project on February 18, 1971, when a crane on the job collapsed.

On February 22, 1971, Dr. Walchef closed down the construction job because of the crane mishap and because there were insufficient funds to pay labor. Shortly thereafter, Continental Mortgage Investors made a demand upon U. S. Financial to commence performance under the $350,000 bond it had executed guaranteeing completion of the structural part of the building.

Subsequently, Lyle G. Bradley and John Van Der Wal, investment counselors in La Jolla, California, agreed to formulate a proposal by which investors

would raise the necessary capital to complete the construction project. As compensation for their services, they sought 70% of the outstanding stock of Walchef Development Corporation, the debtor in this proceeding. On March 23, 1971, Dr. Walchef, the owner of all outstanding shares of Walchef Development, signed an agreement transferring the stock to the investment counselors.

On March 26, 1971, Dr. Walchef transferred to his attorneys, Klitgaard and Branson, Inc., 66⅔% of the same stock in the debtor corporation in exchange for the cancellation of all claims for services rendered or monies advanced. Additionally, the buyer, Klitgaard and Branson, Inc., agreed to represent Dr. Walchef in any lawsuit filed against him by John Van Der Wal and Lyle G. Bradley by reason of "certain agreements executed in their favor by Seller".

On the day following the Klitgaard-Walchef agreement (March 27, 1971), Mr. Klitgaard expended 3 hours drafting a petition for the reorganization of Walchef Development Corporation and an additional amount of time researching the law regarding Chapter X proceedings—per Exhibit 1 to Petition for Allowance of Fees.

In accordance with the legend on the shares, the sale of stock to Mr. Klitgaard and Mr. Branson was subject to the approval of the Department of Corporations of the State of California. The consent of the Department of Corporations to the transfer was applied for and received.

On March 30, 1971, Robert J. Klitgaard filed a petition for reorganization under Chapter X of the Bankruptcy Act; he continued to serve as attorney for the debtor corporation until July 1, 1971. While acting as attorney for the debtor, Mr. Klitgaard received a letter from Robert Pippin, representing Dr. Walchef, inquiring as to the continued validity of the Walchef-Klitgaard agreement of March 26, 1971. The letter reads, in pertinent part, as follows:

It would appear that your pursuance of your lawsuit for fees against Dr. Walchef evidences your abandonment of your claim to Dr. Walchef's stock and the agreement attendant therewith . . . . If in fact you are abandoning your claim to Dr. Walchef's stock and the agreement attendant therewith, might I suggest that we mutually agree to nullify the papers that have been signed and turn control of the Walchef Development Corporation back to Dr. Walchef.

On December 17, 1971, by order of the Bankruptcy Court, the debtor's proceedings were transferred from Chapter X to Chapter XI. On February 7, 1972, the instant application was filed.

Mr. Klitgaard submitted his application as attorney for the debtor corporation, notwithstanding the March 26, 1971 agreement transferring 66⅔% of the stock in the corporation to Klitgaard and Branson. Regardless of the posture Mr. Klitgaard wishes to assume, an award of fees is made with reference to how beneficial or necessary the rendered services were.

Section 243 of the Bankruptcy Act, 11 U.S.C. § 643, prescribes the criteria for an award of compensation for services rendered and reimbursement for costs incurred by a stockholder or an attorney representing a stockholder. The section provides:

In fixing any such allowances, the judge shall give due consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto. 11 U.S.C. § 643.

■ The compensation of an attorney representing the debtor in a Chapter X proceeding is governed by section 241 of the Bankruptcy Act, 11 U.S.C. § 641. The attorney for the debtor is not entitled to an award of compensation for services rendered unless the efforts of the attorney inured to the benefit of the

estate or contributed to the reorganization plan. In re Porto Rican American Tobacco Co., 117 F.2d 599, 601 (2nd Cir. 1941).

■ The trustee in bankruptcy urges that the application for compensation be denied, suggesting that the applicant has failed to demonstrate that his services were of benefit to the estate or were other than incidental to the protection of his interests in the debtor. Assuming, *arguendo*, that Klitgaard's endeavors did benefit the debtor, this court is nonetheless constrained to deny the instant application.

Section 249 of the Bankruptcy Act, 11 U.S.C. § 649, precludes the court from awarding Klitgaard compensation for services rendered and reimbursement for expenses incurred. The court finds that the applicant traded in the stock of the debtor in violation of § 249 of the Bankruptcy Act.[1]

■ Pursuant to the terms of section 249, all persons seeking compensation in a Chapter X proceeding are required to file a statement detailing their acquisition or transfer of any interests in the debtor since the inception of the proceeding. In re Cybern Education, Inc., 478 F.2d 1340 (7th Cir. 1973). Upon filing the statement, the party challenging the award of compensation has the burden of proving that the applicant has acquired or transferred an interest in the debtor in violation of the provision. Berner v. Equitable Office Building Corporation, 175 F.2d 218, 220–221 (2nd Cir. 1949).

Klitgaard contends that section 249 of the Bankruptcy Act does not bar the allowance of fees and costs for the following reasons:

1. the section, by implication, is concerned with trading in the publicly traded stock in the debtor;

2. the prior agreement renders the subsequent agreement invalid; alternatively, the mutual rescission of the March 26, 1971 agreement renders that agreement void *ab initio,* thus no transfer occurred; and

3. the only act which might be considered an acquisition or transfer was the initial agreement of March 26, 1971, which occurred prior to the filing of the Chapter X proceeding.

■ Klitgaard would have the court constrict the application of the statute by limiting its scope to acquisitions or transfers of publicly traded stock. In Wolf v. Weinstein, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963), the Supreme Court noted that access to inside information or control over a reorganization increases the potential for misuse for private gain. In order to insure disinterested service on behalf of the debtor, section 249 was promulgated. The court stated:

> The relevant legislative materials leave no doubt that the purpose behind § 249 was to codify the rule of [In re Paramount-Publix Corp., 12 F. Supp. 823, rev'd in part, 83 F.2d 406 (2nd Cir. 1936) and In re Republic Gas Corp., 35 F.Supp. 300 (S.D.N.Y. 1936)] and to give pervasive effect in Chapter X proceedings to the historic maxim of equity that a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest. *Id.* at 641, 83 S.Ct. at 975.

■■ The provision was designed to minimize the opportunity for misconduct that injured not only stockholders, but

---

1. Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such proceeding. No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred. 11 U.S.C. § 649.

the debtor, its creditors, and other interested groups. In light of these objectives, the court will not limit the applicability of § 249 to transactions in *publicly traded stock*. To impose such a limitation would unduly jeopardize the salutary policies the section was designed to implement.[2]

Klitgaard contends that the March 24, 1971, agreement precluded a subsequent transfer of stock in the debtor corporation. Alternatively, he urges that the rescission of the March 26, 1971 agreement renders the Klitgaard-Walchef agreement void *ab initio*, thus removing the transaction from the ambit of the statute.

The court finds that the Klitgaard-Walchef agreement constitutes a purchase of stock within the meaning of § 249 of the Bankruptcy Act. The executed agreement transferred Dr. Walchef's interest in 2,020 shares of stock in Walchef Development Corporation to Klitgaard and Branson, Inc. As between the parties, title passed to the buyer upon the satisfaction of the condition requiring the approval of the Department of Corporations—approximately one week after the date of the agreement.[3]

If the original transfer of stock from Walchef to Klitgaard is treated as void *ab initio*, precluding the finding of a sale, any insider would be able to avoid the proscriptions of the section by entering into subsequent agreements to rescind prior acquisitions.[4] Such a conclusion would invite speculation in the stock of the debtor and would induce abuse of one's fiduciary relationship in Chapter X proceedings. This court will not subvert the policies underlying section 249 by so holding.

If the June 6, 1971 letter to Robert Klitgaard is interpreted as an invitation to rescind, it is unclear that the mutual rescission would render the Klitgaard-Walchef agreement void *ab initio*. California authorities suggest that a mutual rescission involves the formation of a *new* contract. Harriman v. Tetik, 56 Cal.2d 805, 17 Cal.Rptr. 134, 366 P.2d 486 (1961).

Thus viewed, the mutual rescission of the March 26, 1971 agreement may amount to a resale of the stock in June of 1971—within the proscription of the statute. However, this court is unwilling to engage in drawing such attenuated distinctions at the risk of jeopardizing the salutary policies underlying the statute.

Klitgaard cannot avoid the application of section 249 by alleging that if the purported transfer occurred at all, it preceded the initiation of the Chapter X proceeding. Section 249 of the Bankruptcy Act may apply to a purchase or sale occurring prior to the commence-

2. The fact that the law firm of Klitgaard & Branson, Inc. was the purchaser of the stock does not alter this result. An individual attorney will be denied compensation when that attorney's law partner purchases or sells stock in the debtor corporation in violation of the statute. Matter of Midland United, 64 F.Supp. 399 (D.Del.1946); *see* 6A Collier on Bankruptcy 1026-27 (14th Ed. 1972).

3. Additionally, the schedule of assets filed by the trustee in bankruptcy, at the time of the original petition for reorganization under Chapter X, listed Klitgaard & Branson, Inc., as beneficial owners of 2,020 shares. The schedule further reflects other disputed claims and pledge agreements.

In light of this information there can be little doubt that at the time of the filing of the schedules, the interested parties recog-

nized that Klitgaard not only represented the corporation but was one who would materially benefit from a successful reorganization. His claim of ownership was reflected in the initial filing. In fact, there is no competent evidence presently before the court indicating that Mr. Klitgaard has abandoned his claim to the stock or that the commissioner of corporations has transferred said stock.

4. The Supreme Court noted in Wolf v. Weinstein, *supra*, 372 U.S. at 648, 83 S.Ct. at 978, n.13: "[e]ven where the prohibitions of § 249 are for one reason or another not applicable to a particular insider transaction during reorganization, bankruptcy courts have consistently recognized the existence of inherent equity power to disallow or at least to reduce claims for compensation or reimbursement."

ment of any reorganization proceedings where the applicant was acting in a representative capacity at the time of the transaction. In re Cosgrove-Meeham Coal Corp., 136 F.2d 3 (3rd Cir. 1943).

 The court finds that Mr. Klitgaard was acting in a representative capacity at least as early as March 26, 1971, noting that Klitgaard had acted for some time as attorney for Walchef Development Corporation. The prohibitions of section 249 are not circumvented by structuring the purchase or sale of stock in the debtor corporation so as to take place immediately prior to commencing performance in a representative capacity. As the court stated in In re Equitable Office Bldg. Corporation, 83 F.Supp. 531 (S.D.N.Y. 1949):

> Section 249, and the law of trusts therein codified, express an obligation of an attorney which is not contingent on the date of his formal retainer, or his appearance as counsel in court, but is contingent rather on his assumption of the duties of an attorney representing clients.

The approach promulgated by the New York district court is the only sensible way of dealing with the problem of insider speculation during Chapter X proceedings. Having concluded that Mr. Klitgaard was acting in a representative capacity at the date of transfer and it appearing to the court that the instant transfer was in contemplation of the ensuing reorganization proceedings, the Klitgaard-Walchef transaction falls within the ambit of section 249.

The sanction dictated by the statute is designed to deter a "fiduciary" or "representative" from trading in the stock of the debtor. A denial of compensation is the penalty exacted from the speculating fiduciary. The Klitgaard-Walchef agreement evidences an intent to speculate in the stock of Walchef Development Corporation, and for this act, the statute requires that Mr. Klitgaard shall forfeit compensation.

While the application of this statute seems unduly harsh, the Second Circuit noted in Surface Transit, Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862, 868 (2nd Cir. 1959):

> . . . [I]n § 249 of the Bankruptcy Act Congress clearly intended drastic results and thought them necessary to eliminate the serious abuses of insider information which had long been existent in equity reorganizations.

In light of the foregoing considerations, the court concludes that the March 26, 1971 agreement between Mr. Klitgaard and Dr. Walchef did constitute a violation of § 249 which disentitles him to any compensation for services or reimbursement for costs.

It is so ordered.