[No. B007438. Second Dist., Div. Six. Jan. 16, 1986.]

BERNARD HALPERIN, Plaintiff and Respondent, v.
CLARENCE A. RAVILLE et al., Defendants and Appellants.

766

**COUNSEL**

Donald J. Parrish and J. Michael Armstrong for Defendant and Appellant.

Robert R. Anderson and David L. Praver for Plaintiff and Respondent.

**OPINION**

**STONE, P. J.**—The issue for resolution on appeal is whether the evidence was sufficient to support the trial court's decision that appellant/defendant (son) received the benefit of monies loaned to appellant's father (father) by respondent/plaintiff (plaintiff) and is therefore obligated, along with father, to repay plaintiff. (Civ. Code, § 3521.)[1] Applying the usual standards of appellate review, we conclude there was sufficient evidence permitting application of this rule of equity. Accordingly, the judgment below is affirmed.

FACTS

The facts are stated in the light most favorable to the judgment. (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].) Plaintiff moved to California from New York after retiring from the United States Postal Service in 1971. In California, plaintiff worked part-time as a typist for Jay Vasquez who owned a small financial consulting business. In 1979, Mr. Vasquez introduced plaintiff to father and son at Caraville Arms, the family gun manufacturing business, explaining to plaintiff before the meeting that father was in dire financial circumstances and needed a loan.

Plaintiff and father soon developed a close friendship. They often went gambling together at the horse races and plaintiff frequented Caraville Arms on a regular basis. Several months after their introduction and for the next several years, plaintiff provided money to father at varying intervals and for varying amounts of $250 to $5,000. Father would complain to plaintiff that he needed to borrow money or he would go bankrupt. Plaintiff wanted to

---

[1] Section 3521, part of a number of equitable maxims contained in the Civil Code, reads: "He who takes the benefit must bear the burden."

help out because he admired father's skill as a craftsman and they were friends. Later, plaintiff advanced money to father for fear that the business would collapse and he would lose the money he had already loaned father. Plaintiff's continuous loans consisted solely of his life's savings.

On one occasion, father told plaintiff he needed $20,000 to pay off a debt on a piece of machinery at Caraville Arms. This request came after son had taken an active role in helping plaintiff sell plaintiff's AT&T stock for $48,000. Son had contacted the stockbroker on plaintiff's behalf and had gone with plaintiff to meet with the stockbroker for the first time. Son even forged plaintiff's deceased mother's signature on the stock in order to assist plaintiff in selling them. The stockbroker testified that both plaintiff and son seemed anxious to get the highest possible price for the stock. Son had identified himself to the stockbroker as the owner of Caraville Arms and stated that plaintiff was interested in investing capital in the company. On another occasion, son assisted plaintiff in completing the paperwork to sell plaintiff's oil lease. Plaintiff received $13,000 from this sale of which $10,000 was loaned to father for business purposes.

Plaintiff asked for all the money back he had loaned father after plaintiff was rebuffed by son one day. Father refused.

Father testified he is the sole owner of Caraville Arms. Son "helps out" at Caraville Arms and father pays him as a machinist and gunsmith, but son is not a company employee. Son had his own business next door to father's.

Son stated he has worked for father since 1966. He described his status with Caraville Arms as that of a subcontractor. When testifying, son always referred to Caraville Arms as "our" (meaning father and son) company. At one point, son identified it as a "father/son business." All monetary transactions between plaintiff and father were referred to by son as transactions between plaintiff and "us." Son further stated that Caraville Arms uses machinery and equipment purchased by son. Son also had loaned father money from son's business on a monthly basis to keep Caraville Arms solvent. Eventually, son's company assets were sold to pay the debts of Caraville Arms.

A past employee of Caraville Arms testified that the company was father's business but that son "was in there, working with his father" and father and son "contributed equally in Caraville Arms." He had worked with son in making gun parts. He denied son was an owner of Caraville Arms.

### PROCEEDINGS

Plaintiff's complaint against father and son and Caraville Arms for breach of contract, common counts, and fraud, was filed in 1983. The complaint

alleged that Caraville Arms was a corporation, partnership or other form of business entity. It further stated that, pursuant to an oral agreement, plaintiff loaned money to the defendants in the amount of $80,000 which the defendants refused to repay. Father and son filed a joint answer. They denied the allegations and raised the defense that the funds provided by plaintiff were a gift. The answer admitted that Caraville Arms was a partnership. It also referred to the company as a "family operation."

After a court trial, judgment was entered against father and son in the amount of $78,315.45. The court issued a statement of decision which declared that, as to the issue of whether the monies father received from plaintiff were a gift or loan, logic dictated that a person "does not tender life savings to any individual without anticipation of said funds being returned." The statement contained a list of findings pertinent to this issue and findings supporting the court's conclusions that son was unjustly enriched by the transactions between father and plaintiff and therefore was individually liable to plaintiff. (Civ. Code, § 3521.)

Only son appeals the judgment. He attacks the judgment on the ground that the findings relating to his involvement in the matter were without evidentiary support in the record. Son does not dispute the amount of judgment or the conclusion that the monies provided by plaintiff constituted a loan.

### DISCUSSION

Without reviewing the sufficiency of each separate finding challenged by son,[2] we note son's primary contention that there was no factual basis for

---

[2]The portions of the statement of decision relating to son provided: "2. With regard to the issue of whether or not Defendant Bradley Raville was unjustly enriched as a result of the transactions between Clarence Raville and Plaintiff, the court based its decision on the following: [¶] A. Defendant Bradley Raville testified that "we" manufacture guns. This was in response to inquiry as to the nature of business conducted by Defendant Caraville Arms. Defendant Bradley Raville's statement tends to show joint ownership in said entity. [¶] B. Stockbroker Chris Ailman testified that Bradley Raville indicated he was the owner of Caraville Arms. [¶] C. Chris Ailman further testified that Defendant Bradley Raville initiated the sale of Plaintiff's AT&T stock. [¶] D. Defendant Bradley Raville admitted forging a signature in order to facilitate sale of the AT&T stock. [¶] E. Checks were tendered directly from Plaintiff to Defendant Bradley Raville. [¶] F. Witness DeRouche testified that it was a father/son operation, relating to Caraville Arms. [¶] G. Defendant Bradley Raville testified of lending his father and Caraville Arms approximately $75,000.00 in combined goods and services. [¶] H. Plaintiff testified that Defendant Clarence Raville told him that the $10,000.00 which Defendant Clarence Raville received from Plaintiff was given or lent to Defendant Bradley Raville. [¶] I. Defendant Bradley Raville admitted that machinery and equipment of his was located and maintained within the Caraville Arms' place of business. [¶] J. The court further finds that there has been sufficient testimony to conclude that the operation of Caraville Arms was indeed a father/son business. [¶] K. That the monies re-

concluding he was unjustly enriched by plaintiff's loans because there was no evidence showing son had an ownership interest in Caraville Arms. ■ Plaintiff claims the judgment against son is amply sustained by evidence of son's partnership with father in Caraville Arms and son's consequent liability as a partner for the company's debts. (Corp. Code, §§ 15009, subd. (1), 15015.)

In urging this court to adopt his partnership theory, plaintiff tells this court that we can adopt any legal theory applicable to the case to support the judgment and not necessarily the one used by the lower court. (*City of Alameda* v. *Premier Communications Network, Inc.* (1984) 156 Cal.App.3d 148, 157, fn. 9 [202 Cal.Rptr. 684], cert. den. (1984) 469 U.S. 1073 [83 L.Ed.2d 508, 105 S.Ct. 567].) ■ However, because we agree with son that no evidence was presented below of son's legal interest in Caraville Arms, the only possible theory of law applicable to the case is the equitable one adopted by the trial court.

Therefore, both plaintiff and son are misguided in approaching the issues on appeal. The question for review is not whether son was a joint-owner or partner of Caraville Arms, but whether he benefited from plaintiff's monetary assistance to that company and so became liable to plaintiff under equitable principles. ■ According to traditional appellate review standards, we must look at the evidence supporting the judgment and disregard contrary evidence, resolving all conflicts in favor of the prevailing party. (*Campbell* v. *Southern Pacific Co., supra,* 22 Cal.3d 60; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ Son testified Caraville Arms was a "father/son business." He also referred to it as "our" business. Son further stated that he continuously

---

ceived by Bradley and Clarence Raville were used for maintaining the business of Caraville Arms and that Caraville Arms benefitted from monies lent by Plaintiff. [¶] L. That Bradley Raville, due to his relationship with Caraville Arms, benefitted from those loans. [¶] M. The court further concludes that it would be inequitable for Defendant Bradley Raville to receive the benefits of said loans without the liability. [¶] 3. With regard to the issue of whether or not Bradley Raville is individually and severally liable to Plaintiff, the court based its decision on the following: [¶] A. Defendant Bradley Raville's action in obtaining the proceeds from the sale of the AT&T stock, including initiating the conversations with Chris Ailman and forging the necessary signature, indicate a tremendous interest in receiving the stock proceeds. This tends to indicate his personal involvement as opposed to merely trying to assist Defendant Clarence Raville. [¶] B. The relationship of Defendant Caraville Arms and Defendant Bradley Raville, as set forth in number 1. [*sic*] above, further substantiates the basis for finding individual liability. [¶] C. The court concluded that Defendant Bradley Raville received the benefits of the loaned monies and therefore should be obligated to repay it (*Civil Code section 3521* 'He who takes the benefit must bear the burden')."

While stating in his appeal brief that the above findings are not supported by substantial evidence, son specifically challenges only findings 2.A-H, claiming these particular findings are unsupported by any evidence whatsoever.

transferred funds from his separate company to Caraville Arms to keep the latter business solvent, and eventually sold his company to accomplish this objective. The inference that Caraville Arms had the utmost personal significance to son was even further strengthened by evidence of son's active participation in the company's affairs, including his daily employment there and his aggressive efforts to secure business funds from plaintiff through the sale of plaintiff's stock and oil lease.

We point out initially that it was entirely proper for the trial court to apply the equitable maxim contained in Civil Code section 3521 to this case. Code of Civil Procedure section 187 provides that a court with jurisdiction over a matter is given all the means necessary to carry out its jurisdiction and that "any suitable process or mode of proceeding" may be employed to effectuate it. ■ "The business of the courts is to administer justice as nearly as may be in accordance with fixed rules of law and procedure, aided wherever and whenever proper and necessary by established and governing principles which relate to equity jurisprudence." (*Estate of Kline* (1934) 138 Cal.App. 514, 520 [32 P.2d 677].)

■ ■ ■■■ In addition, the term "remedy" signifies the judicial means for enforcing a cause of action or redressing a wrong.[3] (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 2, p. 34 citing Civ. Code, § 3523 declaring that "[f]or every wrong there is a remedy.") ■ "[A] remedy may be entirely created by judicial decision where statutory procedure for the enforcement of a right is lacking." (*Id.*, § 3, p. 34.)

■ Section 3521 requires a reasonable interpretation. (*Estate of Bruce* (1938) 27 Cal.App.2d 44, 50 [80 P.2d 82].) It is readily apparent that the trial court was reasonably justified in concluding that, due to son's personal relationship to Caraville Arms, son benefited from plaintiff's loans. No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens. (*Peers* v. *McLaughlin* (1891) 88 Cal. 294, 299 [26 P. 119]; Civ. Code, § 3521.)

Consequently, a showing that a person had the use and benefit of money raises the obligation to pay for the value received. (*Brown* v. *Brown* (1930)

---

[3]Inclusive in our determination of the appropriateness of the trial court's application of section 3521 is Civil Code section 3509 which, in introducing the maxims of jurisprudence, declares: "The maxims . . . hereinafter set forth are intended not to qualify any of the foregoing provisions of this Code, but to aid in their just application." It is our view that section 3521 was applied in this case to effect a remedy once the trial court concluded that plaintiff was entitled to recover against father and son under a contractual right theory. (See Civ. Code, § 1428.) Therefore, the lower court's act conformed to the purpose of the maxims which operate as an aid to the just application of the law. (§ 3509; *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 21 [51 Cal.Rptr. 881, 415 P.2d 769].)

104 Cal.App. 480, 489 [285 P. 1086].) ■ Moreover, where several people may be liable to a plaintiff on the same claim, there is only one right and no inconsistency in seeking its enforcement against all of them. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 146, p. 176.) "'A party may pursue any number of consistent and concurrent remedies against different persons, until he obtains satisfaction from some of them'; . . ." (*Ibid.*)

■ Certainly, inferences can be drawn that son was a partner of Caraville Arms because of his contribution in time, loans and equipment. (*Greene* v. *Brooks* (1965) 235 Cal.App.2d 161, 166 [45 Cal.Rptr. 99].) Indeed, the trial judge stated that son's testimony tended to show joint ownership in father's business. Nevertheless, the issue of son's alleged partnership status in Caraville Arms was not litigated in the trial court and appeared not to concern plaintiff in that proceeding. Plaintiff did not plead that son was a partner of Caraville Arms nor did he present proof at trial of a partnership between father and son. His theory of son's liability at trial was son's involvement in the receipt of various loans from plaintiff and son's own loans to Caraville Arms. A party is not permitted to adopt a new and different theory on appeal. (*Signal Hill Aviation Co.* v. *Stroppe* (1979) 96 Cal.App.3d 627, 638 [158 Cal.Rptr. 178].) Therefore, a ruling by this court that a partnership could be inferred from the evidence would deny father and son their day in court relative to this issue. (*Ibid.*)

■ Furthermore, on appeal, plaintiff relies solely on statements of witnesses at trial to support his *inference* of a partnership. The establishment of a partnership is a mixed question of law and fact. Such a question must be addressed to the trial, not the appellate, court. (*Harriman* v. *Tetik* (1961) 56 Cal.2d 805, 810 [17 Cal.Rptr. 134, 366 P.2d 486].) Thus, son's point that the term "family operation" is not the legal equivalent of a partnership has merit, at least in the present case. The only thing that is certain from the testimony is that father depended upon son to provide labor for the company, that is, to actually manufacture the gun parts.

■ Plaintiff argues that son's and father's joint answer was a judicial admission which conclusively established son's partnership in Caraville Arms. (*Lifton* v. *Harshman* (1947) 80 Cal.App.2d 422, 431-432 [182 P.2d 222], disapproved on other grds., *Pao Ch'en Lee* v. *Gregoriou* (1958) 50 Cal.2d 502, 506 [326 P.2d 135].) Plaintiff has misinterpreted the pleadings. A distinction must be made between admissions which are merely probative and those which are dispositive of an issue. If the pleader alleges the former, evidence may still be received on the ultimate issue. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 850 [176 Cal.Rptr. 239].) As son points out, the answer did not identify the

company's partners. Since there was no admission that son was a partner, the answer was merely probative of the issue of whether son was a partner.

■ Without evidence of a partnership, the record reveals that son had an important role in the company and a direct personal stake in the survival of Caraville Arms. Based on this degree of son's involvement to that entity, it would be unjust for this court to conclude that the trial court erred in applying section 3521.

The judgment is affirmed. Costs on appeal are awarded to plaintiff.

Gilbert, J., and Abbe, J., concurred.