Filed 5/2/13  Sepe v. Wiesenfeld CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM SEPE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LISA SEPE-WIESENFELD, as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | B238687<br><br>(Los Angeles County<br> Super. Ct. No. SC109399) |

        APPEAL from an judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Reversed.

        Lowe Law Group and Steven T. Lowe for Plaintiff and Appellant.

        Crandall, Wade & Lowe and Edwin B. Brown for Defendants and Respondents Lisa Sepe-Wiesenfeld individually and as trustee of the Sepe Family Trust and Louis Sepe.

        Matthew E. Hess for Defendants and Respondents Parviz Omidvar and Music Royalty Consulting, Inc.

_____

INTRODUCTION

Plaintiff William Sepe claims a right to 50 percent of the royalties his brother Anthony Sepe received for the composition entitled "You're the First, the Last, My Everything" made famous by the late Barry White (the song). After Anthony died, plaintiff sued Anthony's children and the trustee of the Sepe Family Trust (the Sepe defendants) over the publishing royalties, and Music Royalty Consulting, Inc. (MRCI) and Parviz Omidvar (the MRCI defendants) over the songwriting royalties.[1] Plaintiff appeals from the dismissal of his lawsuit after the trial court sustained defendants' demurrers without leave to amend. We hold the statute of limitations in Code of Civil Procedure section 366.2[2] does not apply to plaintiff's claims against the Sepe defendants. We further hold the second amended complaint adequately pled causes of action for intentional interference with contract against Anthony's children and for declaratory relief against the trustee. However, section 366.2 bars plaintiff's causes of action against the MRCI defendants. Accordingly, we reverse that portion of the judgment concerning the causes of action for intentional interference with contract and declaratory relief against certain Sepe defendants and affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Plaintiff's lawsuit*

For purposes of review, we assume the truth of the following allegations. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) In the 1970's, Anthony[3] obtained an assignment of a 20 percent ownership interest in songwriter and publishing royalties from the song. The American Society of Composers, Authors & Publishers (ASCAP)

---

[1] Defendants in the second amended and operative complaint are: (1) the Sepe defendants, comprised of Lisa Sepe Wiesenfeld, individually and as trustee of the Sepe Family Trust, and Louis Sepe, and (2) the MRCI defendants, who are Music Royalty Consulting, Inc., and Parviz Omidvar.

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[3] We refer to parties by their first name for clarity and intend no disrespect thereby.

2

and Warner/Chappell Music, Inc. (Warner) are each responsible for collecting and paying publishing royalties earned by the song.[4] Anthony orally assigned 50 percent of his royalties (i.e., 10 percent of all royalties) in perpetuity to plaintiff in return for $10,000. Anthony acknowledged this assignment in a written agreement dated June 9, 2004. (Together, the assignment to plaintiff and the June 2004 acknowledgment are referred to as the Royalty Agreement.)[5] There are no allegations that plaintiff registered his royalty interest with ASCAP or Warner, and so plaintiff's rights in the royalties derive from his Royalty Agreement with Anthony.

For approximately 30 years, until Anthony's death in March 2009, Anthony regularly paid plaintiff his share of the royalties. In the original complaint, plaintiff alleged that Anthony "never paid William the full value of the royalties to which he [was] entitled." Plaintiff received the last royalty payment in February 2009, which covered the last quarter of 2008, with the result he "received his share of royalty payments from Warner[] (and a portion of ASCAP royalties as well) through [Anthony's] death." The next royalty period after Anthony's death closed in March 2009 and plaintiff expected a payment in May or June 2009. Plaintiff received no royalty payments after Anthony's death.

---

**4** "ASCAP is a 'performing rights society,' a nonprofit organization that licenses the music of its members and collects royalties whenever that music is performed publicly." (*Range Road Music, Inc. v. East Coast Foods, Inc*. (9th Cir. 2012) 668 F.3d 1148, 1151, cert. den. *East Coast Foods, Inc. v. Range Road Music, Inc.* (2012) 133 S.Ct. 209.) Publishing royalties, such as those paid by Warner, are paid to " 'compensate the owner of a musical composition for use of the copyrighted material at a set statutory rate.' " (*Jasper v. Bovina Music, Inc*. (2d Cir. 2002) 314 F.3d 42, 44-45, fn. 1.)

**5** The Royalty Agreement reads, "Anthony Sepe hereby confirms that his brother, William Sepe is in fact a fifty percent (50%) owner of all royalties that are to be paid as a result of that certain song, "You are my First, my Last, my Everything". Such royalties are being paid by ASCAP and Warner Brothers or their successor and assigns." (Capitalization omitted.) The agreement was executed on June 9, 2004 and witnessed by Anthony's wife Shirley Sepe and plaintiff's wife Barbara Sepe.

Anthony died intestate in March 2009. Anthony's children, Lisa Sepe Wiesenfeld and Louis Sepe, and his wife Shirley Sepe, created the Sepe Family Trust (the Trust) approximately six months after Anthony's death, without complying with the Probate Code, to succeed to Anthony's right to the royalties. Lisa as trustee refused to account for or pay plaintiff his portion of the royalties.

Plaintiff learned after Anthony's death, that in January 2008, over a year before his death, Anthony "had wrongfully" assigned to MRCI and its president, Parviz Omidvar all of Anthony's ownership rights in the publishing royalties paid by ASCAP (the 2008 MRCI Assignment). Anthony and Omidvar were close friends and business associates. Omidvar knew that Anthony did not have the right to transfer that which he did not own. Plaintiff received no payments from MRCI even after contacting MRCI and Omidvar. Attached to the original complaint was a letter dated October 20, 2009 from ASCAP to the MRCI defendants discussing Anthony's 2008 MRCI Assignment. ASCAP agreed to place a hold on the disputed portion of the royalties earned by the song until this lawsuit is resolved.

In January 2009, just months before Anthony's death, the Sepe defendants "induced" a declaration from Anthony that purports to terminate the Royalty Agreement upon Anthony's death (the 2009 Termination Declaration).[6] Plaintiff only learned of the 2009 Termination Declaration after Anthony died.

---

[6] Exhibit 2 is the 2009 Termination Declaration. It is an untitled, one and a half page document, signed by Anthony and Shirley. It commences with "I, Tony Sepe, being of sound mind and body, declare under penalty of perjury that the foregoing is true and correct." Paragraph 3 of the document states, "Sometime in the 1970's or early 1980's I gave to my brother Bill Sepe the right to receive a portion of the income from the writer's royalties (only) derived from the distribution of the aforementioned song. . . . [*I*]*t was not my intention, in that agreement and/or document or any other document or any other non written agreement or gift, if any are alleged, to pass, nor did I pass any title, nor sell, transfer or hypothecate any right, nor advise any publishing or royalty administration or publishing administration company or any other entity of a transfer of rights or title, as none was intended at that time or any other time*. [¶] I did agree to distribute to Bill Sepe a portion of the proceeds of the said writer's royalties, as they were received by the undersigned, *with the undersigned continuing on as the sole owner, in perpetuity, of the*

On these facts, plaintiff asserted three causes of action: (1) declaratory relief, (2) intentional interference with contract, and (3) breach of contract. He added to the first amended complaint two other relevant causes of action seeking (4) imposition of a constructive trust and (5) to quiet title.

2. *The demurrers*

The Sepe defendants and MRCI defendants separately demurred. They argued that the gravamen of plaintiff's complaint is that *Anthony* breached his Royalty Agreement with plaintiff and so, because the lawsuit was filed 17 months after Anthony died, it is barred by the one-year statute of limitations in section 366.2 for causes of action against a decedent. They argued the original complaint alleged that Anthony was the person who breached the Royalty Agreement and plaintiff cannot omit that critical allegation or admission of Anthony's wrongdoing to avoid the bar of section 366.2. Defendants also argued that plaintiff did not state a cause of action for interference with the Royalty Agreement because, as Anthony had already breached the Royalty Agreement by assigning his interests to MRCI, plaintiff could not demonstrate the Royalty Agreement would have been performed but for the interference of Anthony's children, Lisa and Louis. The Sepe defendants also argued that the Trust could not have breached the Royalty Agreement as it was not a party to it.

---

*said rights*. Each time I received a check for such writer's royalty payments, *I then paid over Bill's portion to him on a paid in/paid out basis*. This arrangement has continued from the beginning of our agreement, through the date of this declaration and *will continue, as to all receipts of funds received for that specific writer's royalty, only until I am deceased*. It is specifically understood, and I specifically declare herein, that *this was my only intention . . . .*" The document further clarified that "*I hereby declare, that this was meant to be a revocable assignment of a portion of the proceeds*, with attendant distribution thereof, with *the trigger of the revocation of assignment and distribution being my death. . . .* Therefore, any and all payments to Bill Sepe or to his descendents and/or transferees were and are to cease and shall cease to be paid to Bill Sepe and or his wife, heirs descendents or assignees/transferees, if any, as of the date of my death, in accordance with the original intentions of our agreement, the actual agreement and/or as contained in any document signed by me and given to Bill Sepe at any time." (Italics added.)

5

The trial court conceptualized the case to two parts: those allegations involving ASCAP royalties paid to MRCI allegedly diverted by the 2008 MRCI Assignment, and those allegations concerning the Warner royalties paid to the Sepe defendants allegedly hijacked by the 2009 Termination Declaration. The court ruled that with his 2008 MRCI Assignment of the ASCAP royalties to MRCI, *Anthony* breached the Royalty Agreement with plaintiff thus triggering the statute of limitations in section 366.2.

However, the court granted leave to amend the breach of contract and interference with contract causes of action alleged against the Sepe defendants, and the declaratory relief cause of action as against the trustee, all of which involved the Warner royalties and the 2009 Termination Declaration. Although the complaint contained no allegations that the Trust was a party to plaintiff's Royalty Agreement with Anthony, or that it succeeded to Anthony's obligations under that agreement, the court granted leave to amend to allege that the Trust accepted the benefits of the Royalty Agreement (i.e., any part of the $10,000 plaintiff paid for his 10 percent of the royalties) and hence incurred obligations to plaintiff arising from the Royalty Agreement so as to allege the existence of a contract between the Sepe defendants and plaintiff.

With respect to the cause of action for intentional interference with contract, the court granted leave to amend as to all defendants. The court rejected defendants' argument that no interference could be alleged because by the time of the alleged acts of interference, Anthony had already breached the contract by his 2008 MRCI Assignment of royalties to MRCI. By paying plaintiff royalties until just before his death, the court ruled, Anthony "considered the [Royalty A]greement to be in effect at the time of his death." The court granted plaintiff leave to amend to allege that the 2009 Termination Declaration was obtained by undue influence or fraud, or that Anthony lacked capacity to execute the declaration, and that the 2008 MRCI Assignment was obtained by conduct of a defendant designed to induce Anthony to breach the Royalty Agreement.

Finally, the trial court denied leave to amend the constructive trust and quiet title causes of action in their entirety. As to the MRCI defendants, the court ruled they were barred by section 366.2. The court exercised its discretion to rule that constructive trust

6

is a remedy not an independent cause of action. It also ruled the quiet title cause of action was duplicative of the declaratory relief claim.

3. *The second amended complaint*

This operative version of the complaint asserts three causes of action: (1) breach of contract; (2) declaratory relief; and (3) intentional interference with existing contract. In the cause of action entitled breach of contract, plaintiff amended to respond to the court's directive by adding that Lisa individually, Louis, and Shirley (between Anthony's death and formation of the Trust), and Lisa as trustee (after the Trust's formation), purported to succeed to ownership of the royalties. "As a result, by virtue thereof, these Defendants assumed/succeeded to any and all obligations related to the royalties, including any liens thereon." The defendants breached this obligation by failing to pay plaintiff his share of the royalties and denying that plaintiff owns a 50 percent share.

In his claim for intentional interference with contract, plaintiff alleges against Lisa individually and Louis that, by virtue of the fact they were Anthony's children, they had full knowledge of the 30 year old Royalty Agreement between their father and uncle. Lisa and Louis intentionally interfered with the Royalty Agreement by exercising undue influence on Anthony to pressure their father, who was on medication "and likely not of sound mental capacity," to execute the 2009 Termination Declaration, which they drafted in legalese, and which is not easily understood, so as to terminate royalties to plaintiff after Anthony's death. The complaint notes that the 2009 Termination Declaration appears to have been drafted by an attorney, not by Anthony himself, and both Lisa and Louis are attorneys. The asserted interference was the hijacking of plaintiff's royalties after Anthony's death.

Against the MRCI defendants, plaintiff alleges that Omidvar was a longtime friend and business associate of Anthony's, conducted due diligence with respect to the song, and knew of plaintiff's Royalty Agreement with Anthony, but nevertheless "intentionally interfered with the [Royalty] Agreement by obtaining an agreement from [Anthony] that transferred all of the ASCAP royalties derived from the Composition to Omidvar/MRCI upon [Anthony's] death (and prior thereto, a portion of same)" "even though

7

Omidvar/MRCI knew that legally [Anthony] did not hold title to half of the royalties." Anthony "continued to pay Plaintiff 50% of what he received from ASCAP through his death" and so plaintiff did not discover the interference until after Anthony's death.

The declaratory relief cause of action, against Lisa as trustee only, alleges that an actual dispute exists between the trustee and plaintiff about whether 50 percent of the Warner royalties earned after March 30, 2009 are to be paid to plaintiff or to the Trust. It describes the positions of both parties to the dispute. Plaintiff specifically requests the court find, pursuant to the Royalty Agreement, that plaintiff is the owner of 50 percent of the Warner royalties currently being collected since Anthony's death by Lisa as trustee of the Trust.

The Sepe defendants generally and specially demurred raising the same statute of limitations and arguing that plaintiff alleged no factual basis for imposing contractual liability against the trustee or the individual defendants. The MRCI defendants demurred on the ground that the allegations of the second amended complaint are "functionally identical to those of the [first amended complaint]" and hence fail to state a cause of action against them for intentional interference with contract. (Capitalization & bold omitted.)

The trial court sustained the demurrers and denied leave to amend. After the judgment of dismissal was entered, plaintiff filed this timely appeal.

DISCUSSION

1. *Standard of review*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility

8

that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126.) Our review is de novo. (*Ibid.*) Toward this end, we must liberally construe the complaint with a view to achieving substantial justice between the parties. (§ 452.)

2. *Section 366.2 does not apply to plaintiff's viable causes of action against the Sepe defendants on the 2009 Termination Declaration but bars plaintiff's causes of action against the MRCI defendants for the 2008 MRCI Assignment.*

Section 366.2 is a "general statute of limitations for all claims *against a decedent*." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 255, italics added.) The statute reads, "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." (§ 366.2, subd. (a).) When the decedent owes money at the time of his or her death and does not pay it, or acts in some manner to repudiate a contractual obligation during his or her lifetime, section 366.2, subdivision (a) will apply. (*Dacey v. Taraday* (2011) 196 Cal.App.4th 962, 986 (*Dacey*).)

Our Supreme Court established from the legislative history of section 366.2 that the statute of limitations was enacted "with the clear understanding and intent that such provisions would govern and apply to 'any action *on a debt of the decedent*,' regardless of whom the action was brought against . . . ." (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 308, italics added, citing Recommendation: Relating to Notice to Creditors in Estate Administration (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 515; accord, *Levine v. Levine* (2002) 102 Cal.App.4th 1256, 1264 -1265.)

While section 366.2 will bar any action on a debt of the decedent or for any wrongdoing committed by the decedent, it will not apply when the debt was not enforceable against the decedent during his or her life, or the wrongdoing was not

9

committed by the decedent. (*Dacey*, *supra*, 196 Cal.App.4th at p. 986.) In *Dacey* the dissolution and windup of a law practice assigned certain cases to partner Burton Goldstein and specified percentages each former partner would receive from the attorney fees recovered by Goldstein in those cases. Goldstein died before those cases settled. Taraday, as administrator of Goldstein's estate, settled the cases and agreed to reduce the estate's share in the fee recovery. When he received nothing from the fee recovery, Dacey did not file a creditor's claim in the probate court, but sued Taraday, among others for Taraday's breach of the dissolution agreement. (*Id*. at p. 966.) The appellate court affirmed the judgment in favor of Dacey ruling that the section 366.2 statute of limitations did not bar Dacey's claims against the estate because it was the administrator, not the decedent Goldstein, who breached the dissolution agreement. (*Dacey*, at p. 986.) The *Dacey* court held "section 366.2 does not apply in the present case where the debt was not enforceable against Goldstein while he was alive and the breach of the contract occurred after Goldstein's death." (*Ibid.*)

In explaining the scope of section 366.2, *Dacey* discussed *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, which observed that section 366.2 " 'applies to claims that could have been brought against the decedent had he or she lived.' " (*Ferraro v. Camarlinghi*, at p. 553.) *Ferraro* held that the statute did not preclude a cause of action for breach of an agreement to make a specific testamentary disposition because the cause of action "could not come into existence until the decedent died having failed to make provision in accordance with her alleged agreement . . . ." (*Id.* at p. 554.) But, section 366.2 will bar an action when the breach or misconduct occurs prior to the decedent's death and the claim is not discovered while the decedent is alive. (*Dacey, supra*, 196 Cal.App.4th at p. 983.) Section 366.2 "is not subject to delayed discovery or tolling due to minority or incapacity." (*Levine v. Levine, supra,* 102 Cal.App.4th at p. 1265.) Thus, claims *against the decedent* for damages that were not ascertainable or suffered until after the decedent's death have been barred by section 366.2. (*Dacey,* at p. 984.) In sum, although section 366.2 applies to actions against the decedent for the decedent's

10

wrongdoing, it does not bar suits alleging someone other than the decedent committed the misconduct. (*Dacey,* at pp. 984, 986.)

Here, defendants argued and the trial court agreed that the gravamen of plaintiff's complaint is that *Anthony* breached the Royalty Agreement with plaintiff, first by his 2008 MRCI Assignment of the ASCAP royalties to MRCI and again with his 2009 Termination Declaration terminating plaintiff's interest in the Warner royalties after Anthony's death. They point to the allegations in the original complaint that *Anthony* "never paid [plaintiff] the full value of the royalties to which he is entitled." Thus, defendants argue, the entire lawsuit is barred by section 366.2 because the complaint seeks to recover for Anthony's wrongdoing and was brought more than a year after Anthony's death.[7] We analyze this ruling in two parts.

   a. *The Sepe defendants*

Defendants distort the sweep of plaintiff's complaint by arguing that *all* of plaintiff's claims are against Anthony for his conduct before death.[8] After the original complaint, and presumably in recognition that section 366.2 barred his claims for damages arising from *Anthony's* conduct, plaintiff dropped the allegations of *Anthony's* misconduct from his first and second complaint. Consequently, the gravamen of plaintiff's complaint with respect to the Sepe defendants is the independent wrongdoing of Lisa, Louis, and the trustee in disrupting plaintiff's Royalty Agreement so as to usurp

---

[7]     Defendants cite to discovery responses which were contained in a motion for judicial notice below. The parties have not pointed this court to where in the record the trial court granted the motion. However, we will disregard those discovery responses. Although a demurrer lies for defects appearing on the face of the complaint or from matters of which the court must or may take judicial notice (*Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879), this evidence does not affect our conclusion.

[8]     No version of plaintiff's complaint implied, as the Sepe defendants urge, that Anthony breached the Royalty Agreement "by failing to execute a testamentary instrument to ensure that after his death, one-half of his royalty payments would go to Plaintiff and not to [Anthony's] estate." In any case, pursuant to *Ferraro v. Camarlinghi*, *supra*, 161 Cal.App.4th at page 554, an allegation that Anthony breached an agreement to make a specific testamentary disposition might not be subject to the bar of section 366.2.

11

plaintiff's royalty rights after Anthony died. As in *Ferraro*, plaintiff's claim against defendants could not come into existence until Anthony died and all royalty payments stopped. Plaintiff's complaint against the Sepe defendants thus is not an action on Anthony's debt as there was no money Anthony owed and did not pay during his lifetime. (*Dacey*, *supra*, 196 Cal.App.4th at p. 986.) More important, Anthony is not the party alleged to have committed the misconduct; Anthony cannot have interfered with a contract to which he was a party (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514) and Anthony is not the party who has a dispute with plaintiff requiring declaratory relief. Accordingly, section 366.2 does not bar any of plaintiff's viable causes of action alleged directly against the Sepe defendants for those defendants' own wrongdoing. (*Dacey*, at p. 986.)

The parties dispute whether *Estate of Yool* (2007) 151 Cal.App.4th 867 applies. There, the decedent and her daughter purchased property together. After decedent died, the daughter sued and asserted a resulting trust in her favor on the ground the decedent had not provided consideration for the property, never intended to take beneficial title, and accepted legal title merely as an accommodation to facilitate financing. (*Id.* at p. 871.) The *Yool* court held that section 366.2 did not apply as the decedent never repudiated the agreement or showed resistance to conveying the property to the plaintiff before death. (*Estate of Yool*, at p. 877.) No cause of action, accrued or not yet accrued, existed at the time of the decedent's death and thus no action that could have been commenced on that cause. (*Id.* at pp. 876-877.) The facts established that the decedent would have conveyed title to the daughter had the daughter asked.[9] (*Ibid.*)

---

[9]   *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, cited by Sepe defendants is distinguished. There, section 366.2 barred the lawsuit because the substance of the claims were for the *personal misconduct of the decedent* that was completed entirely before the decedent died, and for which the decedent could have been held personally liable. "*The action is one that could have been 'brought on a liability of the person'* (§ 366.2, subd. (a)), and *is based ' "on a debt of the decedent"' * [citation] . . . ." (*Stoltenberg v. Newman*, at pp. 296-297, italics added.) By contrast, as explained, the gravamen of plaintiff's allegations against the Sepe defendants is that they engaged in

12

Here, plaintiff asserted against the Sepe defendants that Anthony continued to pay plaintiff his portion of the royalties until Anthony's death. By pleading the Sepe defendants' undue influence and Anthony's lack of mental capacity, plaintiff is alleging that Anthony did not repudiate the Royalty Agreement with plaintiff. (*Estate of Yool, supra,* 151 Cal.App.4th at p. 877.) Instead, he pleads *defendants'* intentional interference with that agreement. In short, the gravamen of plaintiff's allegations are aimed at the Sepe defendants' individual wrongs and so section 366.2 does not apply to the viable causes of action.

Citing *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, the Sepe defendants contend that by dropping his allegations directed at Anthony's misconduct from the first and second amended complaints, plaintiff is merely pleading around the bar of section 366.2. The Sepe defendants argue that plaintiff alleged in the original complaint that Anthony breached the Royalty Agreement because plaintiff alleged Anthony "never paid William the full value of the royalties to which he [was] entitled." In the operative complaint, the Sepe defendants argue, plaintiff is "now claiming that Anthony *did not breach* the oral agreement." (Italics added.) *Cantu* explained, "[a] plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that *contradict* the facts pleaded in the original complaint or by *suppressing facts which prove the pleaded facts false.* [Citation.]" (*Cantu v. Resolution Trust Corp.,* at p. 877, italics added.) Liberally construing the complaints here (§ 452), plaintiff has not alleged *contradictory*, *conflicting or inconsistent* facts. In dropping the above quoted allegation from the original complaint, plaintiff is not alleging Anthony did not breach the Royalty Agreement. Indeed, plaintiff always alleged Anthony paid plaintiff his royalties until his death and hence Anthony considered the Royalty Agreement to be in effect. Rather, with the amendments, plaintiff is simply no longer seeking to recover for Anthony's misconduct or on Anthony's debt. He is seeking to recover for the Sepe

their own independent misconduct that disrupted plaintiff's Royalty Agreement with Anthony.

defendants' independent wrongdoing.  Thus, plaintiff is alleging a violation of a separate primary right by a different party than the decedent.  Plaintiff is not precluded by section 366.2 from seeking damages for the Sepe defendants' own acts of misconduct causing the independent invasion of plaintiff's right to the royalties.  (*Dacey*, *supra*, 196 Cal.App.4th at p. 986.)[10]  For the foregoing reasons, the trial court erred in ruling that any viable causes of action against the Sepe defendants are barred by section 366.2.[11]

b. *The MRCI defendants*

Although plaintiff's allegations against the Sepe defendants involve the wrongful conduct of those defendants instead of Anthony, the primary right plaintiff is seeking to assert against the MRCI defendants is for Anthony's wrongdoing in transferring the ASCAP royalties to MRCI:  The general allegations in the operative complaint assert that "*Tony Sepe had wrongfully assigned* all of his ownership rights in the ASCAP publishing royalties for the Composition to Omidvar/MRCI."  (Italics added.)  Although the cause of

---

[10]     The Sepe defendants also argue, citing *Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, that by dropping his original allegations concerning Anthony, plaintiff has improperly split his cause of action.  Splitting causes of action is not at issue here. "The rule against splitting a cause of action is . . . in part a rule of *abatement* and in part a rule of *res judicata*."  (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1145-1146.) " 'The primary right theory has a fairly narrow field of application.  It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in *two suits*.' " (*Ibid.*, italics added.)  A plaintiff may not split a single cause of action and make it the basis of several *suits*.  (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 45, pp. 108-109.)  But a plaintiff may *plead* a number of legal *theories* in a single complaint (*id*., at §§ 49, pp. 112-113 & 402, pp. 542-543), even though he or she is only entitled a single *recovery* for each distinct item of compensable damage proven.  (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158.)

[11]     In denying leave to amend the operative complaint, the trial court asserted that plaintiff should have opened a probate estate for Anthony and filed a creditor's claim as mentioned in *Dacey*.  (*Dacey, supra*, 196 Cal.App.4th at p. 986.)  As *Dacey* indicates, filing a creditor's claim was necessary if plaintiff sought to bring a cause of action against the estate for Anthony's actions, but it is unnecessary hence and the statute of limitations did not apply as plaintiff seeks to bring an action against a party other than the decedent for that party's wrongdoing.  (*Ibid.*)  Plaintiff was not required to open a probate estate on behalf of his brother because plaintiff is not bringing a claim against the estate.

14

action alleges Omidvar induced Anthony to execute the 2008 MRCI Assignment, the complaint also alleges that *Anthony* "wrongfully" executed that assignment *a full year* before his death, and "*to conceal the transaction, Tony Sepe* continued to receive a portion of the ASCAP royalties of which *he* [*Anthony*] *continued* to pay Plaintiff 50% through his death." Thus, the substance of plaintiff's allegations against the MRCI defendants is that A*nthony voluntarily breached a portion of the Royalty Agreement* when he assigned his right to the ASCAP royalties (as opposed to the Warner Royalties) to MRCI in 2008. Anthony was liable before he died for his breach of a portion of the Royalty Agreement during his lifetime even if plaintiff did not discover his damage until after Anthony's death. (*Dacey*, *supra*, 196 Cal.App.4th at p. 984.) No amount of amendment can circumvent plaintiff's allegations that Anthony was the wrongdoer with respect to the 2008 MRCI Assignment of part of his royalties and so section 366.2 applies to bar all of plaintiff's allegations against the MRCI defendants concerning the ASCAP royalties. The trial court properly denied leave to amend.

As section 366.2 bars plaintiff's claims against the MRCI defendants, we need not address plaintiff's contentions that the trial court erred in denying him leave to amend other causes of action against the MRCI defendants.

3. *Viable causes of action against the Sepe defendants remain*

Having concluded that section 366.2 does not bar causes of action against the Sepe defendants for their independent tortious conduct, we analyze the specific causes of action to ascertain whether plaintiff has stated or can state a cause of action against the Sepe defendants.

a. *Plaintiff has alleged a cause of action for intentional interference with contract against Lisa individually and Louis.*

" '[T]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

15

[Citations.]'  (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 . . . )  The plaintiff need not allege an actual breach, but only interference with or disruption of his or her contractual relations.  (*Id*. at p. 1129.)"  (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 343-344.)  Moreover, " 'it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself. [Citation.]  [¶] . . . Intentionally inducing or causing a breach of an existing contract is . . . a wrong in and of itself. . . .' "  (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1158.)

The second amended complaint alleged plaintiff's Royalty Agreement with Anthony and the Sepe defendants' awareness of the Royalty Agreement.  With respect to Lisa and Louis, plaintiff alleged that, only two months before Anthony's death, while he was medicated and "not of sound mental capacity," Lisa and Louis, who are attorneys, intentionally interfered with the Royalty Agreement by "exercising undue influence upon Tony Sepe" and "utilizing their fiduciary position to pressure their father" by preparing and causing Anthony to execute the 2009 Termination Declaration, which declaration was "drafted in 'legalese' and not easily understood."  Lisa and Louis allegedly aimed to use the 2009 Termination Declaration to disrupt plaintiff's Royalty Agreement with Anthony.  Plaintiff also alleged that Lisa and Louis hijacked the royalties after Anthony's death and so plaintiff ceased receiving the royalties to which he was due.

Plaintiff has adequately alleged this cause of action against Lisa and Louis because he alleged their intentional acts designed to induce a breach of plaintiff's Royalty Agreement.  (*Korea Supply Co. v. Lockheed Martin Corp*., *supra,* 29 Cal.4th at p. 1158.)  Additionally, although a plaintiff is not generally required to plead evidentiary as opposed to ultimate facts in this cause of action (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 549-550; § 425.10, subd. (a)), plaintiff included allegations of undue influence and Anthony's mental incapacity at the trial court's behest to show that the wrongful conduct was Lisa's and Louis's and, pursuant to *Yool*, that Anthony did not repudiate the Royalty Agreement.  Thus, as against Lisa and Louis, plaintiff sufficiently alleged all of the necessary elements of the cause of action for intentional interference

16

with existing contract in the first amended complaint.  The trial court erred in sustaining the demurrer to this cause of action.

b.  *Plaintiff has alleged a cause of action for declaratory relief against the trustee*.

"A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court.  (Code Civ. Proc., § 1060; *Maguire v. Hibernia Sav. and Loan Soc*. (1944) 23 Cal.2d 719.)"  (*Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947.)  " 'Before a controversy is ripe for adjudication it " 'must be definite and concrete, touching the legal relations of parties having adverse legal interests.  [Citation.]  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " [Citations.]' [Citation.]" (*Otay Land Co. v. Royal Indemnity Co*. (2008) 169 Cal.App.4th 556, 562.)

Plaintiff's complaint alleged an actual, definite, and concrete controversy existed between him on the one hand, and Lisa as trustee on the other, relating to the right to 10 percent of the Warner royalty interest derived from the song after March 30, 2009.  The complaint describes the controversy in specific terms:  "Plaintiff contends that 10% of all royalties earned by the [song] are to be paid to Plaintiff in perpetuity, and he is entitled to payment thereof.  [¶]  Plaintiff is informed and believes based thereon that Defendant Lisa [], trustee of the Sepe Trust, disputes Plaintiff's contentions, and believes that the Sepe Family Trust holds title to the entirety of the Warner[] royalties."  The complaint requests the court adjudicate the controversy.  The cause of action for declaratory relief against the trustee was legally sufficient to withstand demurrer.

In sustaining the demurrer to the declaratory relief cause of action without leave to amend, the trial court stated "this claim cannot stand alone without a proper breach of contract or tort claim against the SEPE defendants.  Without a proper right to continued

17

royalty payments, which would have had to be established through the first cause of action [breach of contract], there is no proper basis for declaratory relief."

The pertinent principles are set forth in *Lockheed Martin Corp. v. Continental Ins. Co.* (2005) 134 Cal.App.4th 187 (*Lockheed*): "To be entitled to declaratory relief the party need not establish a right to a favorable declaration. 'A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. [Citations.] If these requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to favorable declaration. [Citations.]' (*Wellenkamp v. Bank of America*[, supra,] 21 Cal.3d [at p. 947].) 'It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that the rights and duties be adjudged. . . . If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration.' (*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550 . . .)" (*Lockheed*, *supra*, 134 Cal.App.4th at p. 221, disapproved on other grounds by *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036, fn. 11.)

*Lockheed* explains: "Strictly speaking, a demurrer is a procedurally inappropriate method for disposing of a complaint for declaratory relief. As Witkin observes: '[A] demurrer would leave the parties where they were, with no binding determination of their rights, to await an actual breach and ensuing litigation. This would defeat a fundamental purpose of declaratory relief, to remove uncertainties as to legal rights and duties before breach and without the risks and delays that it involves. In brief, the object of declaratory "relief" is not necessarily a beneficial judgment; rather, it is a determination, favorable or unfavorable, that enables the plaintiff to act with safety. This theory has prevailed, and *the rule is now established that the defendant cannot, on demurrer, attack the merits of*

18

*the plaintiff's claim.* The complaint is sufficient if it shows an actual controversy; *it need not show that plaintiff is in the right*.' (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading § 831, p. 289.)" (*Lockheed, supra*, 134 Cal.App.4th at p. 221, italics added.)

Based on these principles, plaintiff has adequately alleged a cause of action for declaratory relief against the trustee irrespective of whether he is entitled to a favorable declaration.[12] Accordingly, the trial court erred in sustaining the demurrer to the declaratory relief cause of action against the trustee.

4. *The trial court did not abuse its discretion in denying leave to amend the breach of contract, quiet title, and constructive trust causes of action against the Sepe defendants.*

a. *Plaintiff cannot plead a breach of contract cause of action*

The elements of a cause of action for breach of contract are: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom. (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 999.) The trial court ruled plaintiff needed to amend his complaint to allege a contractual relationship between him and the Sepe defendants. The court instructed plaintiff to allege the Sepe defendants accepted the benefit of *plaintiff's Royalty Agreement with Anthony*, such as by obtaining part of the $10,000 consideration plaintiff paid for that Agreement.

Plaintiff's operative complaint does not allege that the Sepe defendants were parties to any contract with plaintiff. As noted, the second amended complaint alleges

---

[12] The trial court ruled that plaintiff had exceeded the scope of leave to amend by including Lisa and Louis as individual defendants in the declaratory relief cause of action. The court was mistaken. *Plaintiff did not allege the declaratory relief cause of action against Lisa and Louis individually*; he only alleged that cause of action against Lisa as trustee.

The court also chastised plaintiff for adding Shirley as a party as that amendment also fell outside the scope of leave. At oral argument on the demurrers to the first amended complaint, plaintiff asked about adding Shirley as a defendant. Although the trial court never directly responded to the request, a fair reading of the transcript indicates that the trial court did not grant leave to add Shirley to the complaint. Without leave, the addition was improper.

19

that the Sepe defendants -- the individual defendants before formation of the Trust and the trustee after the Trust's creation -- purported to succeed to the ownership of the royalties. Therefore, plaintiff alleges, the Sepe defendants "assumed/succeeded to any and all *obligations related to the royalties*, including any liens thereon." (Italics added.) Such liens would presumably be plaintiff's right under his Royalty Agreement with Anthony. The Sepe defendants breached this obligation, the complaint continues, when they failed to pay plaintiff his share of the royalties and denied that plaintiff owns a 50 percent share of those royalties. According to plaintiff's allegations, the contract he alleges was breached in this cause of action is not plaintiff's Royalty Agreement with Anthony but *Anthony's contract with Warner* for the royalties, which contract was subject to plaintiff's lien.

Recognizing he has no contract with the Sepe defendants, plaintiff contends he has nonetheless pled a cause of action for breach of contract based on *Halperin v. Raville* (1986) 176 Cal.App.3d 765 (*Halperin*). In *Halperin*, the plaintiff provided the father $80,000 over a period of time to help the father's business and when he asked for it back, the father and son refused to repay him. (*Id.* at p. 770.) Judgment was entered against the father and son and the son appealed arguing there was no evidence that he was involved in the transaction. (*Ibid.*) The appellate court affirmed based on the maxim in Civil Code section 3521 that "He who takes the benefit must bear the burden." (*Halperin,* at p. 772.) The *Halperin* court reasoned the son benefitted from the plaintiff's loans because the evidence supported the conclusion that the father and son were in the father's business together, the son had a direct personal stake in the company, and the son was involved in the business. (*Id*. at pp. 773-774.) Thus, the court held, "a showing that a person had the use and benefit of money raises the obligation to pay for the value received." (*Id*. at p. 772.)

*Halperin* is not analogous. Unlike *Halperin*, which involved one transaction in which the defendants were effectively co-obligors to the plaintiff (*Halperin*, *supra*, 176 Cal.App.3d at p. 773), here two transactions are necessarily at issue: one is Anthony's contract with Warner, from which contract plaintiff claims the Sepe

20

defendants benefitted, and the other is Anthony's Royalty Agreement with plaintiff. To avail himself of the *Halperin* theory to recover his portion of royalty payments that Warner makes to Anthony, plaintiff would have to allege that he was part of Anthony's contract with Warner and so when the Sepe defendants benefitted from the Anthony-Warner contract, they incurred an obligation to pay plaintiff. (*Id*. at p. 772.) Stated differently, plaintiff did not allege he registered his royalty rights with Warner, and so any obligation to pay plaintiff derives from his separate Royalty Agreement with Anthony only and not with Warner. But, he is not alleging that the Sepe defendants benefitted from that Royalty Agreement; he is alleging they induced Anthony to *repudiate it*.

Plaintiff attempted to plead around this problem by calling his right to royalties an equitable lien on Anthony's contract with Warner, and that the Sepe defendants took Anthony's royalties subject to plaintiff's lien. (*Jud Whitehead Heater Co. v. Obler* (1952) 111 Cal.App.2d 861, 873, quoting from Rest., Restitution, § 161 [" 'If property which is subject to an equitable lien is transferred to a third person who has notice of the equitable lien *or who does not give value*, the equitable lien can be enforced against the property in the hands of the third person.' "].) There is simply no authority for the proposition that plaintiff's separate Royalty Agreement with Anthony constituted a lien, equitable or otherwise, on Anthony's contract with Warner. As plaintiff cannot plead facts that fall within the rule of *Halperin*, and as he has not in three attempts been able to allege the existence of any contract between him and the Sepe defendants, the trial court did not err in denying plaintiff leave to amend this cause of action.

b. *The trial court did not abuse its discretion in sustaining the demurrers to the quiet title and constructive trust causes of action.*

In the first amended complaint, plaintiff alleged he had the legal right to 50 percent of Warner and ASCAP royalties paid to Anthony, and that those royalties were hijacked by all defendants. Plaintiff seeks imposition of a constructive trust on those royalties. In the quiet title cause of action, plaintiff alleged that he desired a

21

determination that he is the owner of 10 percent share of the total songwriter/publishing royalties and licensing fees derived from the song.

As another division of this District Court of Appeal stated, "[a] constructive trust is not a substantive device but merely a remedy . . . ." (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 793.) As for the quiet title cause of action, the trial court did not abuse its discretion in denying leave to amend it because it was "merely duplicative" of the cause of action for declaratory relief.

5. *Conclusion*

To summarize, all of plaintiff's causes of action against the MRCI defendants are barred by the statute of limitations in section 366.2 as plaintiff has been unable to amend to allege the MRCI's independent wrongdoing and plaintiff filed his complaint more than a year after Anthony's death. However, this statute of limitations does not bar plaintiff's viable causes of action against the Sepe defendants, as the gravamen of plaintiff's complaint with respect to the Sepe defendants is the violation of a separate right by a different party than the decedent. Plaintiff has alleged two viable causes of action against the Sepe defendants: intentional interference with contract against Lisa individually and Louis, and declaratory relief against Lisa as trustee of the Sepe Family Trust.

22

DISPOSITION

The judgment is reversed in accordance with the views expressed herein. Appellant to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.